FOXLEY CATTLE COMPANY, A NEBRASKA PARTNERSHIP, APPELLANT, V. BANK OF MEAD, A NEBRASKA BANKING CORPORATION, APPELLEE, ST. PAUL FIRE & MARINE INSURANCE COMPANY, GARNISHEE-APPELLEE.

244 N. W. 2d 205

Filed July 21, 1976. No. 40545.

John R. Douglas of Cassem, Tierney, Adams & Gotch, for appellant.

Joseph Ginsburg of Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellee.

Emil F. Sodoro and Ronald H. Stave, for garnishee-appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This case involves a garnishment action brought by

the plaintiff, Foxley Cattle Company, against the St. Paul Fire and Marine Insurance Company (hereinafter referred to as St. Paul).

Plaintiff is a judgment creditor of the defendant, Bank of Mead, having obtained a judgment in the amount of $227,850.71 against the bank. The basic facts giving rise to plaintiff's cause of action and the resulting judgment in that case were as follows: Kenneth W. Schuette, president and a paid employee of the Bank of Mead, made certain representations to the plaintiff concerning the ownership, clear title, and location of 1,802 head of steers. These representations were in fact untrue. In reliance upon the fraudulent representations of Schuette, plaintiff issued its check, payable to the Bank of Mead and Agri-Land & Beef, Inc. No cattle were ever delivered to plaintiff. The jury verdict in favor of the plaintiff against the Bank of Mead was affirmed by this court on appeal. Foxley Cattle Co. v. Bank of Mead, *ante* p. 1, 241 N. W. 2d 495 (1976).

After obtaining its judgment, plaintiff caused summons and interrogatories in garnishment to be issued to St. Paul. Thereafter, St. Paul filed its answers, admitting that it had issued various bonds to the Bank of Mead (copies of these bonds were attached to the answers), but denying that it was indebted to the defendant at the time of the garnishment summons.

Trial on plaintiff's application for determination of liability of St. Paul was held on September 5, 1975. On October 31, 1975, the District Court found that, at the time of the service of summons in garnishment, St. Paul was indebted to the defendant Bank of Mead under the terms of its bonds and liable to the plaintiff in the amount of $227,850.71, plus $95,808.43 in prejudgment interest, plus $16,457.62 interest to date of judgment, for a total of $340,116.76, plus costs, including reasonable attorneys' fees.

On November 10, 1975, St. Paul filed motions for a

new trial and for a judgment notwithstanding the verdict. On December 5, 1975, the District Court denied the motion for a new trial, but granted the motion for judgment notwithstanding the verdict, finding that its judgment of October 31, 1975, in favor of the plaintiff, should be vacated and set aside and that a judgment for the garnishee should be entered. The District Court vacated and set aside its judgment of October 31, 1975, against St. Paul and entered judgment in favor of St. Paul, finding that St. Paul was not indebted or liable to the plaintiff or the Bank of Mead. Plaintiff appeals. We affirm the judgment of the District Court.

Plaintiff alleges that St. Paul is indebted to the Bank of Mead by virtue of several bonds which St. Paul had issued to the Bank of Mead.

Excess Blanket Employee Dishonesty Bond No. 400 CG 4176, issued by St. Paul to the Bank of Mead provided: "The Underwriter, in consideration of the payment of the premium, and subject to the Declarations made a part hereof, the General Agreements, Conditions and Limitations, and other terms of this bond, agrees to indemnify and hold harmless the Insured from and against any loss sustained by the Insured at any time but discovered during the Bond Period, including loss of money, securities or other property held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefor, through any dishonest, fraudulent or criminal act committed anywhere by any of the Employees, acting alone or in collusion with others * * *."

Bankers Blanket Bond No. 400 CP 5231, issued by St. Paul to the Bank of Mead provided: "The St. Paul Fire and Marine Insurance Company (herein called Underwriter), in consideration of agreed premiums and subject to these Declarations, the General Conditions of this Bond and the terms and limitations expressed in its Insuring Clauses, agrees to indemnify the Insured * * * from and against any losses sustained by the Insured as

the result of any of the occurrences or events mentioned in the Bond * * * which shall happen at any time but which are discovered by the Insured subsequent to noon of the 16th day of March 1970 * * *. * * *

"(A) Dishonesty

"The Underwriter agrees to indemnify the Insured to any amount not exceeding the amount stated in the Declarations for this Insuring Clause, or endorsement amendatory thereto, from and against any loss, or any loss of Property, by reason of any dishonest, fraudulent or criminal act of any of the Employees, wherever committed and whether acting alone or in collusion with others * * *."

Plaintiff contends on appeal, as it did in the District Court, that the misrepresentations made to it by Schuette, a salaried employee of the Bank of Mead, were fraudulent and dishonest acts within the terms of these bonds, and that the judgment which it obtained against the Bank of Mead, based upon these fraudulent misrepresentations, was a loss sustained by the bank as a result of the fraudulent and dishonest act of one of its employees, and thus within the coverage of these bonds, making St. Paul liable and indebted to the Bank of Mead.

"In order that a surety or insurer may be liable under a fidelity bond, the loss suffered by the insured employer must be caused by acts or defaults within the contemplation of the bond." 35 Am. Jur. 2d, Fidelity Bonds and Insurance, § 18, p. 515. The insurer under a fidelity bond is liable only for losses sustained by the insured and of the type described in the insurance contract. KAMI Kountry Broadcasting Co. v. United States Fidelity & Guaranty Co., 190 Neb. 330, 208 N. W. 2d 254 (1973).

The issue, therefore, in this case is whether or not the judgment obtained against the Bank of Mead by the plaintiff, resulting from the fraudulent misrepresentations to the plaintiff by the former president of the

Bank of Mead, was a loss within the contemplation of these bonds. We hold that it was not.

We find the reasoning of Ronnau v. Caravan International Corp., 205 Kan. 154, 468 P. 2d 118 (1970), applicable to this case. The facts in that case are closely on point with the facts of the case before us.

There, the plaintiff, Ronnau, had obtained a default judgment against Caravan. Plaintiff's petition had alleged two causes of action against Caravan. Count I was based upon breach of contract. Count II sought compensatory and punitive damages against Caravan and one Doyle, a former president of Caravan, for fraudulent representations made by Doyle and other employees of Caravan.

Having obtained a default judgment against Caravan on the two counts, plaintiff then brought garnishment proceedings against the Insurance Company of North America (INA) which had issued an indemnity bond to Caravan. INA denied liability or indebtedness to Caravan. Plaintiff, Ronnau, made two claims against INA, asserting that INA was indebted to Caravan on the basis of each claim. Claim one was based upon the judgment which Ronnau had obtained against Caravan, based upon the fraudulent representations made by Caravan and its employees. Ronnau asserted that his judgment based upon these fraudulent representations was within the coverage of the Blanket Honesty Bond, by which INA had agreed to indemnify Caravan against: " '* * * any loss of money or other property, belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, through any fraudulent or dishonest act or acts committed by any of the Employees * * * acting alone or in collusion with others * * * which the Insured shall sustain and discover as provided in Section * * *.' "

The Supreme Court of Kansas upheld the holding of

the District Court denying liability of INA to Caravan under the terms of the Blanket Honesty Bond, stating: "With respect to Claim One, the district court concluded the bond issued to Caravan by INA did not insure Caravan against liability to third parties and imposed no obligation upon INA to indemnify creditors of Caravan, such as the appellant; that the bond was not a third party beneficiary contract, nor a contract of insurance against liability; that the purpose and intent of the bond was to indemnify Caravan against direct losses of money or property through employee dishonesty — not to insure Caravan against liability to third parties; that Caravan had not sustained a direct loss of money or property by reason of appellant's judgment, and that the judgment was not a loss to Caravan within the coverage of the bond. * * *

"The appellant maintains that, in support of Claim One, the focal point of this issue is the fact the Blanket Honesty Bond is, at least in part, a policy of liability insurance, which insures against liability of Caravan to third persons, including himself. He contends that one policy of insurance may indemnify against both direct loss and against liability. He asserts the policy indemnifies or insures against four conditions, and that the third coverage — loss of money or other property for which the insured is legally liable — in consequence of fraudulent and dishonest acts of Caravan's employees, indemnifies against both direct loss and against liability. He argues that INA, as garnishee under the policy, agreed to insure Caravan for any loss of money or other property for which it was 'legally liable'; that Caravan sustained a loss by the fraudulent conduct of its employees and legal liability therefor was established by the judgment below in favor of appellant; that to hold otherwise would be to eliminate the words 'for which the Insured is legally liable' from the policy, which cannot be done; that the words are clear and unmistakable and are to be construed in their natural and ordinary

meaning; that no other provisions of the policy control their meaning, and the indemnity being against liability under the third coverage of the policy, INA became liable to appellant upon determination of Caravan's liability to him by reason of the judgment rendered on Count II of the petition.

"We cannot agree with appellant's construction of the bond. The insuring clause and other pertinent provisions of the bond have been set forth. In clear and unambiguous terms, INA agreed to indemnify Caravan against loss of money or other property caused by 'fraudulent or dishonest' acts of its employees. The category of insurance contracts into which the Blanket Honesty Bond falls is termed fidelity guaranty insurance. A fidelity bond is an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from the want of integrity, fidelity or honesty of employees or other persons holding positions of trust. Such a contract is considered to be one on which the insurer is liable only in the event of a loss sustained by the insured. *It is direct insurance procured by him in favor of himself, as contrasted with bonds running to the benefit of members of the public harmed by the misconduct of the covered individual, which bonds are third-party beneficiary contracts.* (13 Couch on Insurance 2d, §§ 446:1, 446:2.)

"For the insurer to be liable to its insured on a contract of employee fidelity insurance, the insured must sustain an actual loss of the nature insured against. The rule is stated in 13 Couch, op. cit., supra, § 46:219, p. 253, as follows:

" 'The contract of fidelity insurance is a contract against loss. It is a contract of indemnity on which the insurer is liable only in the event of loss sustained by the obligee in consequence of conduct of the nature specified in the contract. It has been held that there can be no recovery on a fidelity bond in the absence of loss or damage to the insured, and lack of any pecuniary loss

by the obligee from the wrongful acts constitutes a good defense, since in such case no recovery can be had.' "See, also, 35 Am. Jur., 2d, Fidelity Bonds and Insurance, § 39, p. 530; 41 Am. Jur., 2d, Indemnity, § 29, p. 720. * * *

"Manifestly, it would not seem from the nature of a fidelity bond that uninsured third parties should be allowed to recover. Nowhere in the language of the bond do we find that INA assumed an obligation to respond to liability of Caravan to third persons, such as the appellant here. The obligation expressed is to indemnify Caravan against loss of money or other property of a described class. The obligation of the bond runs to Caravan, to respond to actual loss it sustains, not the loss of third persons. Under no reasonable construction of the bond can it be said to insure against Caravan's liability to third persons, nor can it be considered to be a third-party beneficiary contract. It was a contract designed solely for the benefit of the formal parties thereto, insuring against loss to Caravan of the described money or property due to the fraudulent or dishonest acts of its employees.

"We are of the firm opinion the INA's contract meant exactly what it said, that is, it insured Caravan only against the defalcations of its employees. The protection of the bond was for the protection of Caravan alone. It was in the nature of a personal insurance contract. The appellant was not a party to the contract, was not named or referred to therein, and had no legal rights thereunder. In short, INA's liability does not arise until Caravan has sustained a proven loss." (Emphasis supplied.)

The above-quoted language effectively disposes of plaintiff's contention and argument that its judgment against the Bank of Mead was a loss within the contemplation of these bonds.

Since we hold that plaintiff's judgment was not a loss sustained by the Bank of Mead within the contemplation

of these bonds, no indebtedness or liability existed on the part of St. Paul to the Bank of Mead which could be garnished by the plaintiff. The District Court was correct in finding in favor of St. Paul.

We have examined the other matters raised by the plaintiff and find them to be without merit.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.