OPINION OF THE COURT
Chief Judge Cooke.
The question on this appeal is whether a fidelity bond is a “contract or policy insuring against liability” within the meaning of subdivision 1 of section 167 of the Insurance Law so as to permit a direct action against the insurer upon the insolvency of the insured. It is held that the bond is not such a policy and, therefore, reversal is in order.
Plaintiff, a co-operative apartment corporation, is the owner of the building at 175 East 74th Street in New York City. In 1970, plaintiff engaged Eudnick, Brett Wyckoff, Inc. (RBW), as agent to manage the property, collect rents for deposit in a trust account, pay obligations arising from the building, and remit the balance, less the management fee, to plaintiff. As part of the management agreement, RBW agreed to obtain a fidelity bond covering those employees responsible for plaintiff’s moneys. Defendant, Hartford Accident and Indemnity Co., issued a policy to RBW for the three-year period from March, 1975, providing coverage for loss sustained by the insured through fraudulent or dishonest acts committed by its employees.
In 1976, plaintiff discovered that its funds had been mis *589 appropriated and, following RBW’s refusal to account, commenced an action against RBW, its officers and directors, Chase Manhattan Bank and Hartford. As against Hartford, plaintiff alleged RBW’s status as its agent and its status as obligee and beneficiary under the fidelity bond. Hartford moved to dismiss the complaint under CPLR 3211 (subd [a], par 7) for failure to state a cause of action, urging that plaintiff was not an insured under the policy and thus lacked standing to bring an action. Plaintiff defaulted on the motion and an order was entered dismissing the complaint as against Hartford.
While the action against the other defendants was pending, Charles A. Rudnick, the president of RBW, filed on behalf of himself a voluntary petition in bankruptcy and stipulated, with the approval of the Bankruptcy Judge, that his obligation to plaintiff arising out of the conversion of plaintiff’s funds was a nondischargeable debt. In March, 1978, pursuant to a stipulation entered into by Rudnick, individually and as chief executive officer of RBW, a judgment in the pending action was entered against Rudnick and RBW for $50,000 plus costs and disbursements. Notice of the judgment was given to Hartford, Rudnick and RBW in April. In May, Daniel Swawite, the executive vice-president of RBW during the policy period and when plaintiff’s funds were converted, filed a proof of loss with Hartford, claiming that RBW suffered a loss through employee dishonesty. Hartford rejected the claim on the ground that it was submitted by an improper party.
Plaintiff, relying on subdivision 1 of section 167 of the Insurance Law, commenced this action against Hartford, alleging that: RBW was plaintiff’s agent, a fidelity insurance policy was issued by Hartford, plaintiff’s moneys were converted by officers and employees of RBW, judgment was entered against Rudnick and RBW for $50,120, the judgment has remained unsatisfied, and that RBW is insolvent. Hartford moved to dismiss on the grounds that the action was barred by res judicata and that a direct action under section 167 was not maintainable because the policy did not provide liability coverage. Special Term granted Hartford’s motion, concluding that the prior dismissal was a bar to the *590 instant suit. The Appellate Division disagreed. That court determined, first, that the prior dismissal did not bar plaintiff’s claim, which was materially different from that in the first action, and second, that section 167 did authorize the direct action. Consequently, it denied Hartford’s motion and certified to this court the question whether its order was properly made. Because the fidelity bond is not a contract or policy insuring against liability within the meaning of section 167, the question certified should be answered in the negative and the order appealed from reversed.[1]
Section 167 of the Insurance Law prescribes the standard provisions to be included in contracts of liability insurance. Subdivision 1 provides in relevant part that every “policy or contract insuring against liability for injury to person * * * or against liability for injury to, or destruction of, property” must contain provisions “that the insolvency or bankruptcy of the person insured * * * shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract” (§ 167, subd 1, par [a]) and that if a judgment against the insured for damages for injury, loss or damage sustained during the life of the policy remains unsatisfied after 30 days following notice to the insurer, then the injured person may bring an action against the insurer for the amount of the judgment up to the limits of the policy (§ 167, subd 1, par [b]).
By its terms, the statute permits a direct action only where liability forms the basis of coverage. Prior to the *591 legislation creating this right, recovery by an injured party could be defeated by the technical interpretation of the insurance policy as indemnifying the insured against only loss — i.e., payment of the judgment (see Jackson v Citizens Cas. Co., 277 NY 385, 389). The insolvency or bankruptcy of an insured, which prevented payment, necessarily relieved the insurer of any obligation to the insured and the injured party was left without a source of recovery (see id.; Coleman v New Amsterdam Cas. Co., 247 NY 271, 275). Under policies providing indemnity only, the insurer thus had an incentive to induce an insured to enter bankruptcy (see Roth v National Auto. Mut. Cas. Co., 202 App Div 667, 669). In contrast, the insolvency of an insured gave no benefit to insurers where the insurance was against liability, for the event insured against was the liability itself and payment of a judgment was irrelevant to the insurer’s obligation (see 11 Couch, Insurance [2d ed], § 44.4, p 522).
The predecessor to section 167, section 109 of the Insurance Law (added by L 1917, ch 524, as amd by L 1918, ch 182, as amd by L 1920, ch 563, § 10),[2] also specified the standard provisions for liability policies and required inclusion of the insolvency and direct action provisions in “policies] of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or, against loss or damage to property caused by animals or [motor-powered vehicles], and for which loss or damage the person insured is liable”. This was construed as “put [ting] an end to the rule that a contract of liability insurance is to be regarded as one of indemnity only” (Brustein v New Amsterdam Cas. Co., 255 NY 137, 142). Thus, the statute was interpreted to destroy any distinction between policies denominated as insurance against liability and those denominated as merely indemnity against loss. Aimed at a “definite mischief”, the statute simply prevented the insolvency of the insured from releasing the surety and gave *592 an injured person a direct action against the insurer (Coleman v New Amsterdam Cas. Co., 247 NY 271, 275, supra).[3]
As can be seen, section 167 and its predecessor were remedial, and sure recovery is provided to a party injured by a person covered by a liability policy, whether denominated liability or indemnity. But the statute can benefit only those intended. It is not all persons injured by an insured who are covered by section 167, but only persons injured by one who has procured liability insurance. If the policy is not one of liability, section 167 does not operate in favor of a person who has suffered a loss through some act of the insured.
The policy at issue here covers “[l]oss of Money, Securities and other property which the Insured shall sustain * * * through any fraudulent or dishonest act or acts committed by any of the Employees” and provides that the “insured property may be owned by the Insured, or held by the Insured in any capacity whether or not the Insured is liable for the loss thereof, or may be property as respects which the insured is legally liable.” Nothing applicable to the employee dishonesty coverage indicates that the agreement insures against liability asserted by a third person. Indeed, by its terms, the coverage attaches to a loss of property irrespective of the insured’s liability therefor. The policy insures only against loss to the insured sustained through the dishonesty of its employees. It does not contemplate and is not dependent upon the assertion of a third-party claim.
Policies indemnifying against liability, to which subdivision 1 of section 167 refers, obligate the insurer to discharge an obligation owed by the insured to another arising from *593 some act of the insured. The risk insured against “is not injury to or loss of the property named in the policy, but liability or responsibility of the insured for loss or injury caused by the use of such property” (6B Appleman, Insurance Law and Practice, § 4254, p 27). In contrast, under the employee dishonesty coverage here, the insurance is against loss of property, owned by or belonging to the insured or others, through employee dishonesty (see Van Schaick v American Sur. Co., 252 App Div 489, mot for lv to app den 277 NY 740). And the loss occurs when money or other covered property is misappropriated from the insured, irrespective of the capacity in which the insured holds it (see id.; American Nat. Ins. Co. v United States Fid. & Guar. Co., 215 So 2d 245 [Miss]). That the insured may be liable to a third party for a loss of money resulting from employee dishonesty does not transform a policy covering the insured against a direct loss into one indemnifying against liability under subdivision 1 of section 167. Nor does that result obtain merely because plaintiff anticipated that the fidelity coverage would operate by virtue of the insured’s liability to it.
Thus, section 167 of the Insurance Law simply does not reach the policy coverage at issue here. Contrary to plaintiff’s argument, Coleman v New Amsterdam Cas. Co. (247 NY 271, supra) does not require a different result. There, the policy expressly provided coverage “ ‘against loss from the liability imposed by law’ ” resulting from erroneously prepared prescriptions (id., at p 273). It is only where the insured’s liability for injury to a third party forms the basis of coverage (see id.; Skenandoa Rayon Corp. v Halifax Fire Ins. Co. of Halifax, 245 App Div 279) that section 167, as did its predecessor, ensures that the benefits of that coverage will run to the injured party. Absent that predicate, however, there is no basis for invoking section 167.
Accordingly, the order of the Appellate Division should be reversed, with costs, defendant’s motion to dismiss the complaint granted and the question certified answered in the negative.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchs-berg and Meyer concur.
Order reversed, etc.

. Contrary to Hartford’s assertion, the Appellate Division correctly determined that the prior dismissal was not a bar to the instant claim. The motion in the first action was directed at the pleading, attacking the sufficiency of the complaint as stating a cause of action. A dismissal on such motion has preclusive effect only as to a new complaint for the same cause of action which fails to correct the defect or supply the omission determined to exist in the earlier complaint (Linton v Perry Knitting Co., 295 NY 14, 17). That the dismissal was after default does not alter this rule of direct estoppel. Here the only thing determined by the dismissal in the prior action was that plaintiffs’ complaint failed to state a cause of action against Hartford because plaintiff had not alleged its standing as an insured or third-party beneficiary to maintain an action under the policy. The instant complaint is materially different, asserting a cause of action under section 167 of the Insurance Law and alleging facts necessary thereto which did not exist at the time of the first action.

. Although not relevant here, additional amendments to section 109 as added by L 1917, ch 524, were made by L 1923, ch 434; L. 1924, ch 639; L 1935, chs 701, 795, § 2; L 1936, ch 433; L 1937, ch 669, § 2.

. That subdivision 1 of section 167 refers only to policies “insuring against liability” does not mean that the Legislature intended to resurrect the distinction between liability coverages existing prior to the enactment of section. 109. Section 109, as interpreted by the courts to destroy that distinction, was merely incorporated into section 167. Indeed, the Legislature has defined “personal injury liability insurance” and “property damage liability insurance” as meaning “insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability” (Insurance Law, § 46, subds 13, 14). Additionally, any attempt to revive the distinction would render the insolvency provision (Insurance Law, § 167, subd 1, par [a]) meaningless, for as noted, insolvency did not relieve the insurer of its obligation under a liability as opposed to indemnity policy.