Fern O. ANDERSON, et al., Appellants,

v.

### EMPLOYERS INSURANCE OF WAUSAU, a corporation, Appellee,

Federal Deposit Insurance Corporation, (Intervenor below).

Robert D. ADAM, et al., Appellants,

v.

### EMPLOYERS INSURANCE OF WAUSAU, a corporation, Appellee,

Federal Deposit Insurance Corporation, (Intervenor below).

Nos. 86–1827, 86–1865.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1987.

Decided Aug. 19, 1987.

James Walker, Bloomington, Ill., for appellants.

Louis Roberts, Chicago, Ill., for appellee.

Thomas J. Vilsack, Mt. Pleasant, Iowa, presented rebuttal.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

McMILLIAN, Circuit Judge.

Robert D. Adam and a group of 120 named plaintiffs (referred to collectively as Adam) (Appeal No. 86–1865), and Fern O. Anderson and a group of 86 named plaintiffs (referred to collectively as Anderson) (Appeal No. 86–1827) appeal from final judgments entered in the District Court[1] for the Southern District of Iowa in favor of Employers Insurance of Wausau (Employers) and the Federal Deposit Insurance Corp. (FDIC). Adam and Anderson brought this action to recover damages on a banker's blanket bond issued by Employers to the Mount Pleasant Bank & Trust Co. (Bank). For reversal, Adam and Anderson argue that the district court erred in holding that they lacked standing to bring a direct action against Employers under Iowa Code § 516.1. For the reasons discussed below, we affirm the judgment of the district court.

Adam and Anderson are Iowa farmers who stored grain in the Prairie Grain Elevator Co. in Stockport, Iowa. Following the suicide of Raymond Keller, part owner and manager of the elevator, the Iowa Commerce Commission closed the elevator. The Commission discovered that the elevator had inadequate assets to meet the obligations of the farmers who had stored grain there. Keller had been a member of the board of directors of the Bank and the elevator was a loan customer of the Bank.

Adam filed an action in Iowa state court against the Bank alleging a conspiracy between R.J. Bontrager, the president of the Bank, and the elevator to defraud them of their grain. Adam was awarded damages equal to the value of the grain stored in the elevator. Anderson filed a separate action against the Bank. The state trial court granted summary judgment in favor of Anderson on the basis of collateral estoppel.

The Iowa Supreme Court subsequently reversed the judgment in favor of Adam because of errors in the jury instructions. *Countryman v. Mount Pleasant Bank & Trust Co.*, 357 N.W.2d 599, 605–07 (Iowa 1984). On retrial, judgment was again entered in favor of Adam on a jury verdict and in favor of Anderson on the basis of

---

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

collateral estoppel. The Iowa Supreme Court affirmed the judgments in 1986. *Adam v. Mount Pleasant Bank & Trust Co.*, 387 N.W.2d 771 (Iowa 1986).

Because the Bank had been placed in receivership and the FDIC appointed receiver, Adam and Anderson were unable to obtain satisfaction of their judgments from the Bank. Adam and Anderson then brought a state court action under Iowa Code § 516.1 against Employers seeking recovery on the banker's blanket bond issued by Employers to the Bank. Employers removed the case to federal court and the FDIC was permitted to intervene.

Employers' motion for summary judgment was granted. *Adam v. Employers Ins.*, No. 82–24–D–2, slip op. at 3–4 (S.D. Iowa June 2, 1986) (*Adam*) (consolidated with No. 83–28–D–2). The district court held that Adam and Anderson lacked standing to bring an action under § 516.1 because the banker's blanket bond was not liability insurance and thus § 516.1 did not authorize a direct action on the bond against Employers. *Id.* at 2–3. This appeal followed.

The sole issue in this case is whether the banker's blanket bond issued by Employers to the Bank is liability insurance within the meaning of § 516.1. Section 516.1 provides in part:

> All policies insuring the legal liability of the insured ... shall ... contain the provision providing that, [if there is an unsatisfied judgment against the insured,] ... the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced [the] claim against such insurer had such insured paid such judgment.

The Iowa Supreme Court has held that § 516.1 assigns to the third-party judgment creditor the right to obtain the insurance contract proceeds, *Trask v. Iowa Kemper Mutual Ins. Co.*, 248 N.W.2d 97, 98 (Iowa 1976), and the right to litigate any disputes concerning coverage. *Farm & City Ins. Co. v. Coover*, 225 N.W.2d 335, 337 (Iowa 1975). Section 516.1 thus becomes a part of every insurance policy issued in the state, even if a policy lacks a provision so stating or has a provision which states the contrary. In addition, an insurance company may not avoid the application of § 516.1 by writing an indemnity policy rather than a liability policy. *Steffens v. American Standard Ins. Co.*, 181 N.W.2d 174, 177 (Iowa 1970).

■■■ The banker's blanket bond at issue in this case provides in part:

> The losses covered by this Bond are as follows: (1) Employee Dishonesty—loss because of any dishonest or fraudulent act of any employee ... including loss, through any such act or of any employee, of property held by the insured for any purpose or in any capacity whether gratuitously or not and whether or not the insured is liable for such loss.

The district court found no Iowa cases which had considered whether such a provision in an insurance policy provides liability insurance and comes within the scope of § 516.1. In the absence of state court cases interpreting a state statute, the district court must determine how the state supreme court would probably interpret the statute. *Gearhart v. Uniden Corp.*, 781 F.2d 147, 149 (8th Cir.1986). Federal appellate courts give special weight to a district court's interpretation of state law. *Nelson v. Missouri Div. of Family Services*, 706 F.2d 276, 278 (8th Cir.1983).

The district court held that the Iowa Supreme Court would construe § 516.1 to apply only to liability insurance policies. *Adam*, slip op. at 3. The district court concluded that the Iowa Supreme Court would interpret and apply § 516.1 as the New York Court of Appeals had interpreted a similar policy and statute in *175 East 74th Corp. v. Hartford Accident & Indem. Co.*, 51 N.Y.2d 585, 435 N.Y.S.2d 584, 416 N.E.2d 584 (1980) (*175 East*). The New York direct action statute at issue in *175 East* applied to "every policy or contract insuring against liability." The New York Court of Appeals determined that "[i]t is only where the insured's liability for injury to a third party forms the basis of coverage that [the statute] insures that benefits of that coverage [will] run to the injured par-

ty." *175 East,* 435 N.Y.S.2d at 587–88, 416 N.E.2d at 587–88. The New York court concluded that a fidelity bond covering losses resulting from the fraudulent or dishonest acts of the insured's employees was not liability insurance and thus the plaintiffs could not maintain a direct action against the insurer on the fidelity bond. *Id.* at 435 N.Y.S.2d at 585, 416 N.E.2d at 585.

 The distinction between liability insurance and fidelity bonds is also consistent with the decisions of several state courts which have considered the same issue. In *Ronnau v. Caravan International Corp.,* 205 Kan. 154, 468 P.2d 118 (1970), the Kansas Supreme Court held that a blanket honesty bond insuring against the "defalcations" of the insured's employees did not cover liability resulting from a fraudulent misrepresentation to a third party by the employee, but instead was a fidelity bond that the insured purchased to protect himself from losses resulting from his employees' dishonesty. *Id.* 468 P.2d at 122. In *Foxley Cattle Co. v. Bank of Mead,* 196 Neb. 587, 244 N.W.2d 205, 209 (1976), the Nebraska Supreme Court similarly held that an insurer under a fidelity bond is liable to the insured for losses resulting from the dishonesty of the insured's employees, but that a third party may not recover on the bond for losses resulting from the fraudulent and dishonest acts of these employees. *Id.* 244 N.W.2d at 207–08.

Adam and Anderson urge this court to adopt the position taken by the Second Circuit in *Matter of F.O. Baroff Co.,* 555 F.2d 38 (2d Cir.1977) (*Baroff*). *Baroff,* however, does not consider whether the insurance policy in issue was liability insurance. The facts in *Baroff* are distinguishable. The court considered whether the plaintiff, a subrogee of the insured, could recover on the broker's blanket bond. *Id.* at 40–41. The court held that the plaintiff could sue the insurer on the bond as a subrogee of the insured because (1) the plaintiff had paid an investor who had been defrauded by the insured's employees, and (2) the insured would have been able to recover from the insurer if the insured had paid the investor. *Baroff* would be analogous to the case before us if the investor in *Baroff,* the third party who had been defrauded by the insured's employees, had brought suit on the bond.

We hold that the district court did not err in concluding that the banker's blanket bond was not liability insurance within the meaning of § 516.1 and in holding that Adam and Anderson did not therefore have standing under § 516.1 to bring an action against Employers on the bond.

Accordingly, the judgment of the district court is affirmed.