CENTRAL NATIONAL INSURANCE COMPANY, OF OMAHA, A Nebraska Corporation, Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA, A Pennsylvania Corporation, and Employers Reinsurance Corporation, A Missouri Corporation, Appellees.

No. 92–1764.

Supreme Court of Iowa.

Sept. 21, 1994.

Jeffrey A. Boehlert and Ronald M. Rankin of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellant.

Richard G. Santi, Randall H. Stefani, and Michael J. Eason of Ahlers, Cooney, Dorweiler, Haynie, Smith & Albee, P.C., Des Moines, for appellee Ins. Co. of North America.

John M. Wharton and Joseph M. Barron of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellee Employers Reinsurance Corp.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

On our limited remand, the district court took additional evidence and granted Insurance Company of North America's (INA's) motion to set aside a default that Central National Insurance Company of Omaha (CNI) took against it. *See Central Nat'l Ins. Co. v. Insurance Co. of N. Am.,* 513 N.W.2d 750, 756 (Iowa 1994) *(Central I ).* Because we retained jurisdiction, this latest ruling is now before us. We affirm that ruling.

Because we affirm the ruling, we proceed to the merits on the summary judgment ruling in favor of INA on the coverage issue under its comprehensive crime policy. We affirm the district court's conclusion that there was—under this policy—no coverage running to the benefit of CNI.

The salient facts surrounding this controversy are found in *Central I,* so we need not repeat them here. We recite additional facts we deem are relevant to the issues discussed.

### I. *The Default Issue.*

Iowa Rule of Civil Procedure 236 provides in relevant part that "[o]n motion and for good cause shown, ... the court may set aside a default ... for ... excusable neglect." In *Central I,* we emphasized the following factors the district court should focus on in determining "excusable neglect" constituting good cause:

First, did the defaulting party actually intend to defend? Whether the party moved promptly to set aside the default is significant on this point. Second, does the defaulting party assert a claim or defense in good faith? Third, did the defaulting party willfully ignore or defy the rules of procedure or was the default simply the result of a mistake? Last, whether relief is warranted should not depend on who made the mistake.

*Central I*, 513 N.W.2d at 756.

INA presented evidence at the remand hearing on these factors. Following the hearing, the district court made detailed findings as to these factors, found as an ultimate fact excusable neglect constituting good cause, and granted INA's motion to set aside the default against it.

In *Central I*, we discussed the principles governing our review of a district court ruling setting aside a default. *See id.* at 753–54. Our review of the remand record leads us to conclude there was substantial evidence to support the district court's findings of fact. The district court was well within its discretion in granting INA's motion to set aside the default. These facts are for the most part undisputed and include the following.

INA received the suit papers at its home office in Philadelphia. CNI did not serve the local INA office in Des Moines. Nor did it send the suit papers there. A copy of the petition in the underlying case CNI had filed against INA's insureds was attached to the suit papers.

Marie Faulhaber, INA claims representative in the Philadelphia office, handled the suit papers. She did so following regular company procedures. Faulhaber reviewed the suit papers. She erroneously concluded that the alleged insureds were the defendants in the lawsuit and that INA would only be involved if it provided coverage for those defendants. After checking the company records, Faulhaber concluded there was no coverage. Based on this conclusion and her erroneous belief that the alleged insureds were the defendants in the lawsuit, Faulhaber did not deliver the papers to INA's attorneys for an answer.

The district court found that Faulhaber did not—in defiance of the rules of civil procedure—intentionally or willfully fail to arrange for a timely answer. The failure was the result of the mistake she had made in reviewing the suit papers.

In addition, the district court found that INA actually intended to defend and had it not been for Faulhaber's mistake, a timely answer would have been filed. The court also found that had CNI advised INA's local office or INA's local attorneys that a suit had been filed and provided them with a courtesy copy of the suit papers, a timely answer would have been filed. Previously, CNI's counsel had advised INA's local counsel that it intended to take a default against INA's insureds in the underlying action. (For some unknown reason the same procedure was not followed in the present proceeding.) In these conversations, INA's local counsel told CNI's counsel there was no coverage and that INA would defend any action CNI brought to establish coverage.

Once INA became aware of the default, it promptly moved to set it aside. Stanley K. Stevens, INA's local claims manager in Des Moines, learned of the default Friday, August 29, 1986. The motion to set aside the default was filed September 3, sixteen days after the default was entered. The district court found the filing on September 3 was prompt action by INA.

The district court further found that INA had—through Stevens' affidavit—asserted the existence of meritorious defenses to CNI's suit for coverage. The court noted that these defenses were asserted in INA's answer and that eventually these defenses carried the day on INA's successful motion for summary judgment.

Finally, the district court found that relief would not be denied simply because the client—INA—rather than its attorneys made the mistake.

## II. *The Coverage Issue.*

Our review of summary judgment is at law. Iowa R.App.P. 4. Summary judgment is appropriate under Iowa Rule of Civil Procedure 237 only when the pleadings, deposi-

tions, answers to interrogatories, admissions on file, and affidavits show that (1) there is no genuine issue of material fact, and (2) the moving party is entitled to a judgment as a matter of law. *Hofco, Inc. v. National Union Fire Ins. Co.*, 482 N.W.2d 397, 400 (Iowa 1992) (citation omitted).

The party moving for summary judgment carries the burden of showing the nonexistence of a genuine issue of material fact. *First Nat'l Bank v. Kenny*, 454 N.W.2d 589, 591 (Iowa 1990). The party resisting the motion should be afforded every legitimate inference that can reasonably be deduced from the evidence. *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 195 (Iowa 1985). A fact question is generated if reasonable minds can differ on how the issue should be resolved. *Id.* No fact question arises if the only conflict concerns legal consequences flowing from undisputed facts. *Brown v. Monticello State Bank*, 360 N.W.2d 81, 84 (Iowa 1984). In such circumstances, summary judgment is proper. *Jacobs v. Stover*, 243 N.W.2d 642, 643 (Iowa 1976).

CNI attacks the district court's summary judgment on several grounds. We have considered all these grounds and conclude only two merit discussion. First, CNI believes that the court erroneously characterized the policy at issue as a fidelity bond instead of a liability policy. Second, CNI contends that no matter how the policy is characterized, CNI had an absolute right to proceed against INA under our direct action statute, Iowa Code section 516.1 (1985).

A. *Fidelity bond or liability policy.* The key language in the policy in question provides:

The Company ... agrees with the Insured ... to pay the Insured for:

Employee Dishonesty Coverage—Commercial Blanket 1A. *Loss of Money*, Securities, and other property *which the Insured shall sustain ... resulting directly from one or more fraudulent or dishonest acts committed by an Employee* acting alone or in collusion with others.

(Emphasis added.) The pivotal question is whether this language is a contract of indemnity against loss or a contract of indemnity against liability. The difference between the two is this. In the contract of indemnity against loss, the insurance company does not become liable until the insured has suffered a proven loss. In contrast, in the contract of indemnity against liability, the obligation of the insurance company becomes fixed when the liability attaches to the insured. *Ronnau v. Caravan Int'l Corp.*, 205 Kan. 154, 158–59, 468 P.2d 118, 122 (1970).

A fidelity bond is a contract of indemnity against loss. *Id.* *Ronnau* describes a fidelity bond this way:

A fidelity bond is an indemnity insurance contract whereby one for consideration agrees to indemnify the insured against loss arising from the want of integrity, fidelity or honesty of employees or other persons holding positions of trust. Such a contract is considered to be one on which the insurer is liable only in the event of a loss sustained by the insured. It is direct insurance procured by him in favor of himself, as contrasted with bonds running to the benefit of members of the public harmed by the misconduct of the covered individual, which bonds are third-party beneficiary contracts.

*Id.*

Contrary to CNI's contention, the coverage policy language quoted above clearly shows that INA intended to indemnify Church for an *actual loss* of money, securities, or other property sustained by Church because of fraudulent acts by its employees.

In interpreting fidelity bond language similar to that at issue here, *Ronnau* explained:

Nowhere in the language of the bond do we find that [the insurer] assumed an obligation to respond to [the] liability of [the insured] to third persons, such as the appellant here. The obligation expressed is to indemnify [the insured] against loss of money or other property of a described class. The obligation of the bond runs to [the insured], to respond to actual loss it sustains, not the loss of third persons. Under no reasonable construction of the bond can it be said to insure against [the insured's] liability to third persons, nor can

it be considered to be a third-party beneficiary contract.

We are of the firm opinion [the insurer's] contract meant exactly what it said, that is, it insured [the insured] only against the defalcations of its employees. The protection of the bond was for the protection of [the insured] alone. It was in the nature of a personal insurance contract. The appellant was not a party to the contract, was not named or referred to therein, and had no legal rights thereunder. In short, [the insurer's] liability does not arise until [the insured] has sustained a proven loss.

*Ronnau,* 468 P.2d at 122–23. The policy language clearly insures Church for actual losses to *Church.* It does not indemnify the losses third parties such as CNI may sustain because of wrongful actions by Church or its employees. The district court was correct in so concluding.

■ B. *Scope of direct action statute.* CNI thinks that, in any event, it can proceed against INA under Iowa Code section 516.1, our direct action statute. CNI believes that section 516.1 grants a right to third parties like itself to collect against insurers although the policy in question is a fidelity bond.

INA responds that section 516.1 does not apply. We agree.

Section 516.1 provides in pertinent part: All policies *insuring the legal liability of the insured* ... shall ... contain a provision providing that, in event an execution on a judgment against the insured be returned unsatisfied in an action ... the judgment creditor shall have a right of action against the insurer.

(Emphasis added.)

As mentioned, the policy here does not insure the legal liability of the insured—Church—to third parties. So, we conclude—as the district court did—that section 516.1 does not apply. That code section therefore gives CNI no direct right of action against INA.

The eighth circuit court of appeals has interpreted section 516.1 in the same manner. And, we think correctly so. *See Anderson v. Employers Ins. of Wausau,* 826 F.2d 777, 779–80 (8th Cir.1987). The bond language in *Anderson* was similar to the language here. The federal district court predicted that we would construe section 516.1 to apply only to liability insurance policies. The federal district court also predicted that we would interpret and apply section 516.1 as the New York Court of Appeals had interpreted a similar policy and statute in *175 East 74th Corp. v. Hartford Accident & Indemnity Co.,* 51 N.Y.2d 585, 416 N.E.2d 584, 435 N.Y.S.2d 584 (1980) (*175 East*). The federal district court concluded the blanket bond was not liability insurance within the meaning of section 516.1. It held that parties defrauded by the defunct insured had no standing to sue the insurer that had issued the blanket bond. The court of appeals agreed with this reasoning and affirmed. *See Anderson,* 826 F.2d at 779–80.

The federal district court's prediction in *Anderson* was accurate. We do find *175 East* persuasive. In holding that the policy was not covered by the New York direct action statute, the New York Court of Appeals said:

Nothing applicable to the employee dishonesty coverage indicates that the agreement insures against liability asserted by a third person. Indeed, by its terms, the coverage attaches to a loss of property irrespective of the insured's liability therefor. The policy insures only against loss to the insured sustained through the dishonesty of its employees. It does not contemplate and is not dependent upon the assertion of a third-party claim.

Policies indemnifying against liability, to which [the New York direct action statute] refers, obligate the insurer to discharge an obligation owed by the insured to another arising from some act of the insured. The risk insured against "is not injury to or loss of the property named in the policy, but liability or responsibility of the insured for loss or injury caused by the use of such property". In contrast, under the employee dishonesty coverage here, the insurance is against loss of property, owned by or belonging to the insured or others, through employee dishonesty. And the loss occurs when money or other covered property is

misappropriated from the insured, irrespective of the capacity in which the insured holds it. That the insured may be liable to a third party for a loss of money resulting from employee dishonesty does not transform a policy covering the insured against a direct loss into one indemnifying against liability under [the New York direct action statute]. Nor does that result obtain merely because plaintiff anticipated that the fidelity coverage would operate by virtue of the insured's liability to it.

*175 East,* 51 N.Y.2d at 592–93, 416 N.E.2d at 587, 435 N.Y.S.2d at 587–88 (citations omitted). This reasoning applies with equal force to the policy language here and our direct action statute.

Contrary to CNI's contention, we agree with the district court that *Steffens v. American Standard Insurance Co.,* 181 N.W.2d 174 (Iowa 1970) has no application here. *Steffens* holds that section 516.1 applies to (1) policies that insure against the insured's liability to third parties, and (2) policies that indemnify an insured for payments the insured makes to third parties. *Steffens v. American Standard Ins. Co.,* 181 N.W.2d 174, 177 (Iowa 1970). In the policy here, INA neither insures against an insured's liability to third parties nor indemnifies an insured for payments the insured makes to third parties.

We reject CNI's final contention that section 516.1 allows it to sue and recover from INA under subrogation principles. CNI contends it has paid some third parties defrauded by employees of Church—the insured. So, CNI argues, it is a subrogee entitled—under section 516.1—to sue, and recover from, INA the proceeds it paid to the defrauded parties.

 The rights to which the subrogee succeeds are the same as, and no greater than, those of the person for whom the subrogee is substituted. The subrogee can acquire no claim, security, or *remedy* the subrogor did not have. In addition, such claim, security, and remedy is taken subject to the limitations, burdens, and disqualifications incident to them in the hands of the party to whom the subrogee is subrogated. Furthermore, such claim, security, and remedy are subject to any defenses that might have been urged against the party to whom the subrogee is subrogated. *Bales v. Warren County,* 478 N.W.2d 398, 400 (Iowa 1991).

Under subrogation principles, then, CNI succeeded to the rights and remedies of those third parties who were defrauded by employees of Church and who were paid by CNI because of such fraud. CNI's rights and remedies are the same as, but no greater than, those defrauded parties' rights. As mentioned, the policy here does not indemnify against the losses third parties may sustain because of the wrongful actions of Church or its employees. For that reason, the defrauded parties have no claim nor remedy against INA under the policy. CNI, as subrogee to the rights of those defrauded parties, faces the same limitation. Like the district court, we conclude that section 516.1 simply does not apply here, even under a subrogation theory.

CNI relies on *In re F.O. Baroff Co.,* 555 F.2d 38 (2d Cir.1977) concerning the subrogation issue. *Baroff* interpreted the New York direct action statute as allowing a subrogee of a defrauded party to sue and recover on a blanket bond covering a defunct insured. *Anderson* attempts to distinguish *Baroff,* but we are not convinced the distinction is valid. *See Anderson,* 826 F.2d at 780.

 We think *Baroff* is in direct conflict with *175 East,* later decided by the New York Court of Appeals. Because the question is one of state law, we agree with INA that the decision of New York's highest court is controlling on this issue. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194 (1938). We find the reasoning in *175 East* more persuasive. We hold to our conclusion that our own direct action statute does not give a subrogee—who has paid a defrauded third party—a direct action against an insurer on a fidelity policy that insures only against loss to the insured through the dishonesty of its employees.

Section 516.1 was enacted to

provide relief to the third person in the indemnity insurance situation. There, if the insured could not pay the third person, the insured could not recover from the

insurer, and so the hapless third person could not recover either.

*Steffens,* 181 N.W.2d at 177 (citation omitted). The statute does not abrogate a third party's traditional remedies under liability policies. *Id.* By the same token, neither does it give third parties rights not recognized under policies like the one here.

III. *Disposition.* There was substantial evidence to support the district court's decision to grant INA's motion to set aside the default. On the merits, we conclude the district court correctly determined that the policy in question afforded CNI no coverage for monies it paid third parties defrauded by Church's employees. Because the issue was a legal one, summary judgment was the proper relief. For all these reasons, we affirm.

**AFFIRMED.**