OPINION OF THE COURT
Stephen G. Crane, J.
*166 MS Associates L.P. (MS) moves to be substituted as plaintiff pursuant to CPLR 1018. There is no opposition to this branch of the motion, and it is granted on consent. MS also seeks (1) confirmation of a so-called amended Referee’s report dated July 26, 1999 in place of the earlier Referee’s report dated March 12, 1999, to reflect “corrected” figures due on the mortgage, and (2) modification of this court’s decision dated May 11, 1999 (the Decision) which, on motion of the assignor of MS, CLM Properties, Inc. (CLM), confirmed the original report of the Referee and granted judgment of foreclosure and sale.
Nationwide Associates Inc. (Nationwide) and Barry Richter cross-move to compel plaintiff to deliver an assignment of the note and mortgage and cause of action for foreclosure on tender of all sums legally due and owing, to plaintiff.
Prior Proceedings and Events
This action was commenced on March 2, 1998. It demanded judgment of foreclosure and alleged that the principal sum due on the mortgage as of January 1, 1998 was $211,283.95. The complaint asked for that sum with interest as stated in the mortgage together with fire insurance premiums, taxes, assessments, water rates, interest or liens or other charges affecting the mortgaged premises. It sought judgment against Barry Richter and Daniel Perla for any deficiency based on their guaranty. And, it asked for the costs and expenses of the action and of the sale. The defendants either defaulted or waived service of papers.
On August 4, 1998 the court granted plaintiffs motion to appoint a Referee to compute the sums due to plaintiff on the mortgage. The court appointed Ravi Batra, Esq., to “take proof as to any payments which have been made, and to compute the amount due on the mortgaged premises to Plaintiff.”
On August 18, 1998, plaintiff assigned the mortgage to CLM in consideration of $210,000 plus foreclosure attorney’s fees. The assignment included the “bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the [sic] interest.” In a separate document, plaintiff assigned to CLM the promissory note and guaranty thereof by Barry Richter and Daniel Perla executed on January 24, 1992.[1]
Mr. Batra rendered his Referee’s report of computations dated March 12, 1999. In it he reported that there was due *167 since January 1, 1998 principal in the sum of $211,283.95, together with default interest at 24% per annum from that date[2] to February 15, 1999 in the sum of $47,538.90. He reported a total due of $255,827.27 (corrected from a figure of $255,927.27).[3] On April 21, 1999, plaintiff moved for judgment of foreclosure in the usual form and to substitute CLM in place of the named plaintiff. The supporting affirmation of plaintiffs attorney stated that the Referee to Compute had found there was due and owing $258,822.85 “with interest at two percent from February 15, 1999.” (This is the figure, of course, that the Referee did find before crediting $2,995.58 for defendant’s escrow. In addition, counsel was wrong about the interest rate reported. The Referee found the rate to be 24% as specified in the mortgage for the default rate.) In further support of the motion, the affidavit of the president of CLM stated that the “entire amount due Plaintiff including interest through February 15, 1999, is the sum of $255,927.27.” He gave the same figures and dates for principal and interest at 24% as are reflected in the Referee’s report. However, he added that defendants are entitled to a credit of $2,995.58. The senior vice-president of the bank derived a total of $241,248.76 reflecting this credit. The Referee also reflected this credit in the calculations contained in his original report.
Guarantor Richter on April 30 notified plaintiffs attorney that he was “ready, willing and able to pay all sums due and owing to the mortgagee in consideration for an assignment of the mortgage, note and cause of action.”
This court, by the Decision dated May 11, 1999, granted on default plaintiffs motion (sequence No. 003) “to amend the caption to reflect the substition [sic] of CLM Properties, Inc. as plaintiff, to confirm the Report of the Referee to Compute * * * and for Judgment of Foreclosure and Sale.” The Decision directed a settle order. This is the Decision that the motion at bar asks to modify.
Swiftly following this Decision, CLM assigned the mortgage to MS for “One Hundred Dollars and other good and valuable *168 consideration.” This assignment embraced as well the “bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with interest.” In contrast to the mortgagee’s earlier assignment to CLM, the subassignment to MS made no mention of the personal guaranty of Richter and Perla.
In conformity with the Decision counsel for MS submitted and later withdrew a proposed “Order & Judgment of Foreclosure & Sale.” Its first decretal paragraph provided for confirmation and ratification in all respects of the report of Ravi Batra, Esq. The second paragraph declared that plaintiff was entitled to $255,827.27 plus interest from February 16, 1999.
The last event of note before MS brought on the motion at bar was the misguided effort of MS to return to the Referee, without a court order, to amend his report. The Referee rendered an amended report dated July 26, 1999. In it he reports that the amount due to plaintiff through July 15, 1999 is $306,331.91." This consists of the same principal of $211,283.93[4] as the Referee had reflected in his original report. He calculated interest at 24% per annum from January 1, 1998[5] to July 15, 1999 or $78,175.08. (The correct figure is $78,175.12.) He added late fees of $408.90 and attorney’s fees of $16,464.[6] The aggregate amounted to the $306,331.91 mentioned above. This amended Referee’s report is the subject of the branch of the motion to confirm.
The law applicable to this motion and the cross motion of Richter and Nationwide takes us through principles of assignment, law of the case, judicial estoppel, refereeships to compute, rights of redemption and equitable termination of accruing interest.
Law of Assignment
It is familiar learning that an assignee stands in the shoes of the assignor. MS, therefore, is in no better position than was CLM. Indeed, MS is subject to all the equities and burdens that attached to CLM and Fourth Federal Savings Bank. *169 (Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121, 126 [1975]; Grossi v Rialto Sec. Corp., 273 NY 403, 406 [1937]; Trisingh Enters. v Kessler, 249 AD2d 45, 46 [1st Dept 1998]; 6A NY Jur 2d, Assignments, §§ 58, 65; 73 NY Jur 2d, Judgments, § 184.) Therefore, the motion and cross motion need to be analyzed as if CLM were still the holder of the mortgage and note subject only to any reduction in the scope of its rights occasioned by the assignment to MS. This presents the question: Could CLM have made this motion?
Law of the Case and Judicial Estoppel
Where an issue has been resolved on the merits earlier in the litigation, this resolution becomes the law of the case. (Locilento v Coleman Catholic High School, 134 AD2d 39, 43 [3d Dept 1987]; cf., Mulder v Donaldson, Lufkin & Jenrette, 224 AD2d 125, 131 [1st Dept 1996].) The law of the case doctrine also applies to motions. Matter ofDondi v Jones (40 NY2d 8, 15 [1976]) states: “It is fundamental that, in the absence of a statutory exception * * * and in order to prevent vexatious and repeated applications on the same point, a motion once fully heard and decided cannot be revived again or renewed unless with leave of the court or Judge who denied it or if made upon presentation of new facts which have occurred since the denial of the previous motion.” (See also, 28 NY Jur 2d, Courts and Judges, § 236.)
Lest there be any hesitation, on the ground that it was granted on default, about the applicability of the doctrine of the law of the case attaching to CLM’s motion for judgment of foreclosure and sale upon the original Referee’s report and calculations, the law is also settled that a decision on default is deemed a decision on the merits. (Cf., Rubeo v National Grange Mut. Ins. Co., 93 NY2d 750; 175 E. 74th Corp. v Hartford Acc. & Indem. Co., 51 NY2d 585, 590, n 1 [1980] [“That the dismissal was after default does not alter this rule of direct estoppel”]; Bray v Cox, 38 NY2d 350, 355 [1976] [“Thus, we hold the dismissal of an appeal for want of prosecution to be on the merits of all claims which could have been litigated had the appeal been timely”]; Christian v Hashmet Mgt. Corp., 189 AD2d 597 [1st Dept 1993]; 28 NY Jur 2d, Courts and Judges, § 252; 10 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 5011.12, 5011.30.)
Also playing a role in resolving the motion and cross motion at bar is the concept of judicial estoppel or, more precisely, estoppel against inconsistent positions. Judicial estoppel is *170 described in 57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 53: “[W]here a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position * * * to the prejudice of the adverse party in the original proceeding.” Strictly speaking, for judicial estoppel to apply, the party estopped must have procured a judgment on the basis of the inconsistent position. (See, e.g., Manhattan Ave. Dev. Corp. v Meit, 224 AD2d 191, 192 [1st Dept], lv denied 88 NY2d 803 [1996]; Meyers v Getter, 194 AD2d 595 [2d Dept 1993].)
This is not to say, however, that no estoppel can result from inconsistent sworn statements made in the course of the same proceeding. (57 NY Jur 2d, op. cit., § 53.) As this court recognized in City of New York v Show World (178 Misc 2d 812, 823, n 4 [Sup Ct, NY County 1998]), such inconsistency can support an estoppel. (Inter-Power of N. Y. v Niagara Mohawk Power Corp., 208 AD2d 1073, 1075 [3d Dept 1994] [“(T)he doctrine of judicial estoppel * * * ‘prevent(s) a party from inequitably adopting a position directly contrary to or inconsistent with an earlier assumed position in the same proceeding ór a prior proceeding’ ”], citing Shepardson v Town of Schodack, 195 AD2d 630, 632 [3d Dept 1993], affd 83 NY2d 894 [1994].)
Referees to Compute
RPAPL 1321 authorizes the court to direct a Referee to compute the amount due the plaintiff in an action to foreclose a mortgage. A Referee has no power beyond the order of reference. (Feder Corp. v Bozkurtian, 48 AD2d 701 [2d Dept 1975].) The court has the power to bypass the Referee’s appointment and retain the authority itself to perform all the decision-making including the computation of the amount due. This is rarely done except in New York County where it reserves to itself the function to fix legal fees when they are requested. (2 Bergman, New York Mortgage Foreclosures § 27.01 [1999].)
Right of Redemption, Accrual of Interest and Attorney’s Fees
A mortgagor may tender payment of the balance due on the mortgage as long as it is unconditional. If the mortgagee wrongfully refuses to accept the tender, additional interest may be forfeited. (1 Bergman, op. cit., § 4.08.) The court has discretion to determine whether interest is recoverable. (Sloane v Gape, 216 AD2d 285, 286 [2d Dept 1995], lv dismissed 87 NY2d 968 *171 [1996].) A guarantor of the mortgage debt may make a tender and demand assignment of the mortgage as a subrogee of the debtor. (Chemical Bank v Meltzer, 93 NY2d 296, 304 [1999].) However, tender is not accomplished by a mere offer to pay. Actual payment is required (1 Bergman, op. cit, § 2.05 [2]; § 4.08).
Finally, where a mortgage provides for legal costs or reasonable attorney’s fees, it will be enforced. (2 Bergman, op. cit., § 26.01.) But, there must be an express provision for payment of attorney’s fees in the mortgage. (Ibid.) A provision solely in the note will not accomplish the mortgagee’s objective. “A provision in the note for the payment of legal fees simply does not create an obligation to pay counsel fees incurred in an action to foreclose on the mortgage secured by that note.” (2 Bergman, op. cit, §§ 26.01, 26.01 [1], citing Lipton v Specter, 96 AD2d 549 [2d Dept 1983], lv denied 61 NY2d 608 [1984].)
Application to Motion and Cross Motion
MS, the assignee, wants this court to confirm the amended Referee’s report. The Referee was without jurisdiction to render that report. His original report had already been confirmed and was the basis for granting CLM’s motion for judgment of foreclosure and sale “in the usual form.” CLM proclaimed the validity of the figures reported by the Referee. It also conceded the credit of $2,995.58.
MS as assignee steps into the shoes of CLM. CLM could only “correct” the alleged errors it induced in the Referee’s original report by moving this court to reconsider its decision granting plaintiff’s motion for judgment and to recommit the computation to the Referee. Of course, this would require a showing of new facts or, at the very least, an explanation of why the errors were not discovered before the report was submitted in support of the motion for judgment of foreclosure and sale. (Foley v Roche, 68 AD2d 558, 568 [1st Dept 1979].)
Since MS has not moved for renewal or reconsideration, nor complied with the requisites of such a motion, its application to confirm the amended Referee’s report is blocked by the law of the case and by estoppel. Its assignor has saluted the correctness of Mr. Batra’s original computation. CLM obtained a favorable decision on its motion for judgment based on that computation.
Even were the court to reach the merits of the amended Referee’s report, the plaintiff would not prevail. First, the interest calculation for the month of January 1998 is inflated by *172 $2,464.98 — the difference between 10% and 24% for that month. In addition, CLM agreed that a $2,995.58 credit was owing to defendants. The amended report omitted this credit.[7] Second, the amended report accepted without analysis the legal fees of $16,464. But, MS would be entitled[8] at most to $3,000 to the extent Mr. Kaufman’s fees are reasonable. Collection of the fees of the original plaintiff and of CLM were not assigned to MS. (Neither, for that matter, were the guarantees of Richter and Perla.) Finally, the late fees of $408.90 seem to be calculated on the installment that preceded the balloon and were extended over a four-month period. This is at odds with the theory of the complaint that defendants failed to pay the unpaid balance (i.e., the balloon) on January 30, 1998.
The court does not agree with the defendants that the default rate of interest cannot apply to the balloon payment, but only applies to the installments. The balloon payment itself is an installment, albeit the final installment under the note.
The defendants also claim that MS is not entitled to attorney’s fees at all. It is true that CLM never asked for them. It is also accurate to observe that the mortgage is silent as to legal fees. However, the note makes provision for them. This is not good enough. They cannot be recovered in this foreclosure action. (Lipton v Specter, supra.) Moreover, the $3,000 for Mr. Kaufman’s services includes time spent posttender, and much of these services were duplicative of prior counsel’s efforts or were squandered on the misguided effort to obtain an amended Referee’s report. They would, if applied for, be denied for the added reason of plaintiffs lack of showing that they were reasonable and necessary.
In view of the foregoing, Richter and Nationwide may tender in accordance with the figures previously confirmed in the original Referee’s report.
This all means that plaintiffs motion to confirm the amended Referee’s report and to modify the Decision dated May 11, 1999 is denied, save only for a change of caption to reflect the substitution of MS. This also means that the cross motion is granted on condition that Richter or Nationwide or both *173 perform their tender, in accordance with the figures in the Referee’s original report, within a short period to be specified in the order to be settled hereon.

. While the complaint alleges personal guarantees of Richter and Perla, the court has seen no documents bearing their personal signatures.

. Running interest from January 1, 1998 rather than February 1 was error since the default occurred on January 30 when the mortgagor failed to pay the final balloon payment. (See, complaint ff 9 [“The defendants have failed * * * to pay the unpaid balance on its due date, to wit: January 30, 1998”].)

. These figures are in error. The interest for the period covered by the Referee’s report should be $57,046.67. This would yield a total of $268,330.62 less a credit for escrow funds of $2,995.58 or $265,335.04.

. Actually, the original report set forth the figure as $211,283.95 — 2 cents more.

. Again, the date of default alleged in the complaint was January 30, 1998 so that interest for the month of January should only have been 10% not the 24% default rate.

. $13,464 were the fees and disbursements of Isaac Anolic, Esq., the attorney for the original plaintiff and the first assignee; $3,000 were the fees of Uri Kaufman, Esq., attorney for MS.

. It comes with ill grace for MS to repudiate this concession of CLM in Mr. Kaufman’s reply affirmation to the cross motion.

. Only if there had been a provision for them in the mortgage — not the note — would the mortgagee have a right to claim them.