In the Matter of SUSAN M., Appellant, v NEW YORK LAW SCHOOL, Respondent.

First Department, August 3, 1989

**APPEARANCES OF COUNSEL**

*Thomas F. Keane* of counsel *(Keane & Schorn,* attorneys), for appellant.

*Jeffrey S. Trachtman* of counsel *(Kramer, Levin, Nessen, Kamin & Frankel,* attorneys), for respondent.

**OPINION OF THE COURT**

WALLACH, J.

■ This is a CPLR article 78 proceeding brought by a student against a law school challenging its decision to dismiss her for academic deficiency and seeking reinstatement to the school. More particularly, the student claims that the grades she received in two courses were arbitrary and capricious and decisive factors in her dismissal. IAS dismissed the proceeding, stressing the reluctance of the courts to intervene in controversies involving academic standards, and finding that the student's objections to the two grades were considered by the school. Because we disagree that one of the grades in question was considered by the school, we reverse to the extent of remanding to the school for further consideration of that grade.

Petitioner student was admitted to respondent law school for a course of study leading to a J.D. degree. Pursuant to respondent's published rules, she was automatically placed on academic probation at the end of her first semester for having failed to achieve a C average. Also under respondent's rules, a student on probation who thereafter fails to achieve both a semester and cumulative average of C is subject to academic dismissal in the discretion of respondent's Academic Status Committee. Such a student, however, has the right to present written and oral statements to the committee explaining her failure to meet the school's academic standards. Petitioner just made the requisite C average in her second and third semesters, but failed to do so in the fourth semester, whereupon she was notified that the committee would be considering whether she should be allowed to continue her studies. In

her written statement to the committee, petitioner blamed her less than C average on the grades she received in two of her fourth semester courses, namely, Constitutional Law II, in which she received a C−, and Corporations, in which she received a D, which grades, she argued, did not "fairly and accurately reflect the knowledge" she had demonstrated on the exams in those courses. Petitioner then came before the committee to state her case orally, but, she alleges, when she raised the subject of the two grades she was immediately interrupted by the chairman and told that the committee would not consider them. This allegation is not directly controverted by respondent and is otherwise consistent with its argument in opposition to the article 78 that "absent some concrete allegation of improper conduct, [a professor's] grading of [a student's] paper is purely a matter of professional discretion. For the court, or for that matter even the administrators of the law school, to become involved in second-guessing the subjective evaluation of an essay question by a professor would cut to the heart of academic freedom and discretion."

■ If nothing else, petitioner's allegations are concrete. Concerning her grade in Constitutional Law II, she asserts that the professor misled half of the students in the class, herself included, to believe, contrary to fact, that the use of textbooks and other reference materials was not permitted at the exam, and she argues that the exam should have been invalidated in view of the unfair advantage enjoyed by the students who took the exam with the aid of such materials. Respondent accepts, or at least assumes, arguendo, that the misunderstanding was the fault of its professor, but strongly rejects that any unfair advantage resulted. In respondent's view, the structure of the exam was such that the availability of reference materials to some of the students could have had "only a marginal impact on students' grades". Petitioner argues that "[t]his cannot be the honest opinion of a professor with a modicum of sense", but, whatever the dictates of common sense, this is precisely the type of professional, educational judgment the courts will not review *(James v Board of Educ.,* 42 NY2d 357, 359 ["Whether or not an examination had been so compromised as to strip it of validity as a device for measuring educational achievement is a matter committed to the professional judgment and discretion of those responsible for [its] administration * * *. It is not a matter for the courts."]).

Concerning her grade in Corporations, petitioner alleges

that when she met with the professor to discuss it, the professor told her that she was given zero credit on an essay question worth 30% of the exam because she analyzed the problem under both Delaware and New York law when only Delaware law was called for. The professor also allegedly told petitioner that since her answer did correctly analyze the problem under Delaware law, she would have received full credit on this question had she only refrained from mentioning New York law. Petitioner pointed out to the professor that her answer did indeed conclude that Delaware law was applicable, a conclusion clearly stated in the very first sentence of her essay, and that her discussion of the different result compelled by New York law was offered only to obtain extra credit. The professor, however, persisted that petitioner gave two answers to the question, thereby indicating that she did not know which one was correct, and was therefore not entitled to any credit, and also allegedly told petitioner that her conclusion belonged at the end of the answer, not the beginning. Petitioner represents that other professors have advised her always to state her conclusion in the first sentence of her answer and to give more than one point of view in analyzing an exam problem.

■ Respondent responds to none of this since, in its view, it would be "inappropriate" for its professor to engage petitioner "in a debate in this forum as to the fine points of essay writing" and the specific reasons why her exam paper deserved only a D. Instead, respondent argues that petitioner's allegations concerning her grade in Corporations, no less than her allegations concerning her grade in Constitutional Law II, are insufficient as a matter of law inasmuch as "the highly discretionary, professional, and inevitably subjective process of actually grading law school exams" is beyond judicial review. We disagree. As seldom and reluctantly as the principle has been applied to actually override a determination, a school's academic evaluation of a student is not "completely immune from judicial scrutiny" *(Matter of Olsson v Board of Higher Educ.,* 49 NY2d 408, 413). If a school exercises its discretion to dismiss a student for academic reasons in an arbitrary or irrational fashion, the courts will intervene *(supra,* at 414).

The only argument respondent makes which, if accepted, could conceivably result in dismissal of the proceeding as a matter of law is to the effect that the grade petitioner received in Corporations does not matter since the decision to dismiss her was based, not on any particular grades she received, "but

on the totality of her academic performance" throughout her four semesters at the school, which, respondent says, was "marginal" at best over the first three semesters, and, in the fourth semester, left no doubt as to her academic deficiency. We reject this argument because it does not take into account that, under its rules, which it is bound to follow *(Tedeschi v Wagner Coll.,* 49 NY2d 652), respondent's discretion to dismiss for academic deficiency is contingent upon a student's failure to achieve a C average after being put on probation, i.e., that as long as petitioner maintained a C average she could not be dismissed. All petitioner needed in Corporations to maintain a C average was a C+. If petitioner's transcript is any guide to her total academic performance, it does not appear that a C+ was utterly beyond her capabilities. Indeed, given zero credit on any essay question worth 30% of the exam, that petitioner received a D in the course, and not an F, on the face of it seems to indicate something quite positive about the quality of her other answers. In other words, if the possibility of arbitrary grading is accepted, and assumed here as a fact, it would be plausible for petitioner to argue that she would have received a C+ had her essay been rationally graded. In pointing this out, we do not mean to second-guess respondent's expert evaluation of cumulative information bearing upon petitioner's academic performance, nor do we mean to suggest that the decision to dismiss her was not carefully and deliberately made upon the basis of such information. We mean only to say that there would have been no occasion to make the decision in the first place had petitioner received a C+ instead of a D in Corporations, and that an irrational reading of petitioner's essay on the exam in that course is a possibility that cannot be ruled out.

At least when a student's very right to remain in school depends on it, we think the school owes the student some manner of safeguard against the possibility of arbitrary and capricious error in grading, and that, in the absence of any such safeguards, concrete allegations of flagrant misapprehension on the part of the grader entitle the student to a measure of relief. It does not avail respondent for its Corporations professor to deny these allegations by representing that petitioner's grade "was based on the overall quality of her answer, and not, as [petitioner] suggests, on any single, absolute rule with respect to the structure or organization of her answers." This merely raises an issue of credibility as between petitioner and the professor, which is not for the court to resolve in the

first instance, and misconstrues the dispute as one involving, in the professor's words, "a mere disagreement over the quality of an essay answer". At issue is not what grade petitioner should have received but whether the grade received was arbitrary and capricious; not whether petitioner deserved a C+ instead of a D in Corporations but whether she deserved a zero on this particular essay; not the quality of petitioner's answer but the rationality of the professor's grading.

We remand to respondent for further consideration of petitioner's grade in Corporations. In so doing, we do not mean to impose upon it any particular standard of review, and we certainly do not mean to suggest that petitioner deserved more than a D in Corporations. We remand only because respondent's decision to dismiss petitioner should not have been made in the absence of reasonable assurances that the zero given her on the essay in question was a rational exercise of discretion by the grader.

Accordingly, the judgment of the Supreme Court, New York County (Bruce McM. Wright), entered April 27, 1989, which dismissed the petition, should be reversed to the extent appealed from, on the law and the facts, and the petition granted to the extent of remanding the matter to respondent for further proceedings not inconsistent herewith, without costs.

Ross, J. P., CARRO and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 27, 1988, unanimously reversed, to the extent appealed from, on the law and the facts, without costs and without disbursements, and the petition granted to the extent of remanding the matter to respondent for further proceedings not inconsistent with the opinion of this court filed herein.