■ In the Matter of EUGENE G. CHUSID, Appellant, v ALBANY MEDICAL COLLEGE OF UNION UNIVERSITY et al., Respondents.—Mahoney, P. J. Appeal from a judgment of the Supreme Court (McDermott, J.), entered October 4, 1988 in Albany County, which denied petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Albany Medical College of Union University dismissing petitioner from the medical college.

Petitioner was enrolled in a program operated by Rensselaer Polytechnic Institute (hereinafter RPI) and respondent Albany Medical College of Union University (hereinafter AMC) in which qualified students could earn both a bachelor of science and a medical doctor degree in six years. In this program, a student must have a cumulative grade point average of at least 3.2 after two years of undergraduate study at RPI to be eligible to commence his medical school education at AMC. Petitioner's cumulative average after two years was only 2.987. However, feeling that petitioner's academic performance might have been adversely affected by a kidney transplant operation, AMC made an exception and allowed him to commence medical school studies despite the substandard grades.

During his first two years at AMC, which consisted of classroom instruction, petitioner experienced difficulty in achieving acceptable grades. During his first year petitioner received several letters of "academic concern", was placed on academic probation and ranked 125th in a class of 130. During his second year, petitioner was placed on academic warning and was required to repeat a course during the summer in order to be eligible for promotion to a third year. Petitioner did not improve his class ranking at the end of his second year.

During petitioner's third year he received a grade of unsatisfactory in a psychiatry rotation and an evaluation which indicated deficiencies in his clinical practice as well as concern about his ability to function as a physician. Petitioner was required to repeat the psychiatry rotation in order to be promoted to the fourth year and was again placed on aca-

demic warning. At the end of his third year and after marginal performance in his medicine rotation, petitioner ranked last in his class and AMC's Promotions Committee voted to require him to repeat his third year. Petitioner appealed to the Committee on Student Appeals, which confirmed the decision. Petitioner, through his attorney, negotiated a compromise which required him to repeat the third-year medicine rotation. As part of the compromise, AMC insisted that petitioner's progress be closely monitored and that failure to maintain a grade of "G" (achievement ranging from acceptable to that approaching outstanding) or better in one or more rotations would result in petitioner being considered for dismissal.

Petitioner then repeated the third-year medicine rotation together with five fourth-year rotations, receiving a grade of "G" in each. However, even in those rotations in which he received a grade of "G", petitioner was in the lower end of the passing scale. Thus, in June 1987, when petitioner received grades of "M" (marginally acceptable performance) in two rotations, AMC dismissed him. The sanction of dismissal was upheld by the Committee on Student Appeals. Thereafter, petitioner commenced this CPLR article 78 proceeding challenging AMC's determination dismissing him for academic deficiency and seeking reinstatement. Supreme Court upheld the determination and this appeal ensued.

While courts are reluctant to intervene in controversies involving academic standards, such matters are subject to judicial scrutiny to determine whether an institution acted in good faith or its action was arbitrary or irrational (see, Tedeschi v Wagner Coll., 49 NY2d 652, 658; Matter of Olsson v Board of Higher Educ., 49 NY2d 408, 413-414; Matter of Susan M. v New York Law School, 149 AD2d 69, 72, lv granted 154 AD2d 284). Where, as here, academic achievement, as opposed to nonacademic matters, is the determinative issue, the implied condition on the part of the institution to act in good faith and not arbitrarily may be examined (see, Tedeschi v Wagner Coll., supra). As rarely as judicial review has been used to upset an academic determination, "a school's academic evaluation of a student is not 'completely immune from judicial scrutiny' " (Matter of Susan M. v New York Law School, supra, at 72, quoting Matter of Olsson v Board of Higher Educ., supra, at 413).

In this matter, AMC's guidelines provide that a student who is not performing satisfactorily may "(a) be placed on probation and continue in the regular program; (b) be placed on

probation and be encouraged to undertake a decelerated program * * *; (c) be placed on probation and be allowed to continue only under a decelerated program; or (d) be dismissed". The guidelines further provide, "When a student has been identified as performing at *an unsatisfactory* or at a sustained marginal academic level, the Promotions Committee must make a determination relative to the student's continuing in the regular academic program, continuing in a modified program, being dismissed, or other action deemed appropriate to the circumstances" (emphasis in original).

In our view, AMC's guidelines, which recognize its responsibility to the public to assure appropriate standards of scholarship and professional behavior in the highly sensitive area of medical care, provide flexible criteria for evaluating a student to determine if his academic performance is below the level deemed minimally acceptable to insure that he will be a responsible doctor. A review of faculty evaluations of petitioner's progress through three years of medical school prior to his dismissal in June 1987 reveals a steady deterioration of academic performance in addition to a diminution of interest affecting his performance in the basic sciences, as well as serious deficits in his clinical abilities. Petitioner's grades gradually fell within the classification of sustained marginal performance. This academic performance reasonably provoked AMC's application of its guidelines, heretofore outlined, which resulted in its Promotions Committee undertaking the review of petitioner's record. This review revealed petitioner's failure to obtain grades in all courses of at least "G", a condition that AMC had made in permitting petitioner to continue into the fourth year of medical school. Further, since the evidence indicates that the students who ranked lower than petitioner either repeated a year, participated in remediation or were dismissed, there is no basis to infer that AMC was biased or acted in bad faith. Accordingly, we conclude that AMC's dismissal of petitioner was neither arbitrary nor capricious *(see, Tedeschi v Wagner Coll., supra).*

Finally, in light of considerations previously mentioned that militate against judicial intervention in academic pursuits, we reject any application of the doctrine of "diploma by estoppel", which would permit reinstatement of petitioner to his fourth year in order to complete the curriculum. While letters of recommendation were written by faculty members when petitioner was involved in a search for a residency program, such letters were written before the Promotions Committee had voted to require petitioner to repeat his third year. Thus,

while petitioner was a qualified student when the letters were written, his poor academic and clinical performance thereafter changed his status. Rigid adherence to principles of estoppel is not appropriate in cases involving academic standards *(see, Matter of Olsson v Board of Higher Educ., supra,* at 413).

Judgment affirmed, without costs. Mahoney, P. J., Kane, Casey, Levine and Harvey, JJ., concur.