Ajay P. GARG, Plaintiff,

v.

The ALBERT EINSTEIN COLLEGE OF MEDICINE OF YESHIVA UNIVERSITY, Nella I. Shapiro, M.D., Jean L. Cook, M.D. and Dean Dominick P. Purpura, M.D., Defendants.

No. 89 Civ. 2730 (JES).

United States District Court, S.D. New York.

Sept. 20, 1990.

Robert Rivers, New York City, for plaintiff; Robert Rivers, of counsel.

Martin H. Bockstein, New York City, for defendants; Martin H. Bockstein, Toby Stone, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff Ajay P. Garg brings this action pursuant to the federal civil rights laws, 42 U.S.C. § 1981–1983 (1982) and the Fourth [sic] and Fourteenth Amendments of the United States Constitution. *See* Complaint at ¶ First. In this action plaintiff seeks a declaratory judgment that defendants violated "plaintiff's rights to equal educational opportunity and otherwise unconstitutionally effected [sic] his status as a citizen of the United States," *see id.* at ¶ Second, and restitution of the rights, benefits and privileges of a graduate of the defendant Albert Einstein College of Medicine of Yeshiva University ("AECOM"), which he would have been but for the defendants' alleged discriminatory practices. *See id.* at ¶ Third. The defendants collectively move to dismiss the action pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6) on the grounds that the action is barred by *res judicata* and by the Statute of Limitations, as well as for failure to state a claim upon which relief can be granted. For the reasons that follow, the motion is granted on *res judicata* grounds and the action is dismissed.[1]

## BACKGROUND

Plaintiff, a black male of East Indian descent, was a student at AECOM from approximately August 1981 until he was suspended in 1985. *See* Complaint at ¶¶ Fourth & Seventeenth. The incidents complained of arise out of a series of disputes between plaintiff, AECOM and defendants Dominick P. Purpura, M.D., Dean of AECOM, Nella I. Shapiro, M.D., an Assistant Professor of Surgery at AECOM, and Jean L. Cook, M.D., Associate Dean for Students at AECOM.[2]

In the Spring of 1982 plaintiff missed two final examinations and subsequently in the Spring of 1983, failed to complete three papers required for a psychiatry clerkship. *See* Complaint at ¶ Sixteenth; Affidavit of Martin H. Bockstein at ¶ 10 (sworn to March 2, 1987) ("1987 Bockstein Aff.") (annexed to Affidavit of Martin H. Bockstein as part of Ex. C (sworn to Aug. 1, 1989) ("Bockstein Aff.")). As a consequence, plaintiff was initially given a grade of deferred, which was ultimately converted to a failing grade and plaintiff was therefore advised that he would have to repeat the clerkship. *See* 1987 Bockstein Aff. at ¶ 10(b). However, instead of enrolling in the psychiatry clerkship, plaintiff enrolled in a cardiology preceptorship. *See id.* at ¶ 10(d); Plaintiff's Exhibits in Opposition to the Motion to Dismiss ("P.Ex.") at 29–38.

Plaintiff was thereafter summoned to a meeting of the Committee on Student Promotions ("the Committee") on March 4, 1985, at which he failed to appear, claiming that he had car trouble and could not return to New York from Albany in time for the meeting. Plaintiff was therefore suspended from AECOM. Dr. Cook then wrote a letter to all of the universities to which plaintiff had applied for a position in their residency program stating that plaintiff would not graduate before July 1, 1985. The letter also stated: "In brief, it is Mr.

---

1. Although *res judicata* is ordinarily pleaded as an affirmative defense, *see* Fed.R.Civ.P. 8(c), and resolved on a motion for summary judgment, it is clear that the Court has the discretion to allow *res judicata* to be raised in a pre-answer motion to dismiss. *See, e.g., Lambert v. Conrad,* 536 F.2d 1183, 1186–87 (7th Cir.1976) (citing cases); *Hammer v. Town of Greenburgh,* 440 F.Supp. 27, 28–29 (S.D.N.Y.1977), *aff'd without opinion,* 578 F.2d 1368 (2d Cir.1978). This is especially appropriate where, as here, the plaintiff has had an opportunity to respond to the defendants' factual submissions and has not ob-

jected to the procedure. *See Rodriguez v. Baldrich,* 628 F.2d 691, 692 n. 2 (1st Cir.1980). Moreover, the factual materials necessary to the Court's determination are limited to the state court decision and the record before the state court.

2. It appears from defendants' papers that Dr. Cook has not yet been served with a summons and complaint in this action. *See* Affidavit of Martin H. Bockstein at ¶ 1 (sworn to Aug. 1, 1989) ("Bockstein Aff.").

Garg's sense of responsibility which is of concern." *See* Letter of Jean L. Cook, M.D., to Program Directors of Residency Programs (March 5, 1985) (annexed to Bockstein Aff. as part of Ex. C).

At subsequent meetings in March and April of 1985, the Committee decided to allow plaintiff to complete his degree requirements. However, the Committee also decided that he would have to comply with all of the curriculum requirements, including the requirement that he repeat the psychiatry clerkship. *See* Affidavit of Jean L. Cook, M.D., at ¶ 12 (sworn to February 25, 1987) ("Cook Aff.") (annexed to Bockstein Aff. as part of Ex. C). Plaintiff was also directed to complete a subinternship in medicine or pediatrics and an elective. *See id.*

Plaintiff enrolled in a subinternship in chest medicine at Van Etten Hospital from August to October 1985. However, plaintiff received a failing grade in that subinternship. *See id.* at ¶ 13; P.Ex. at 83–93. Subsequent to that failure, plaintiff was allowed to enroll in another internship at a different hospital which was not informed of his prior difficulties. *See* Cook Aff. at ¶ 13; P.Ex. at 94. Unfortunately, plaintiff failed this internship also. *See* Cook Aff. at ¶ 14.

Finally, the Committee met on February 10, 1986 and unanimously recommended to Purpura that plaintiff be withdrawn from AECOM. *See* 1987 Bockstein Aff. at ¶ 12; Cook Aff. at ¶ 15. However, the Committee met again in April of 1986 to reconsider that decision in light of plaintiff's contention that a medical condition was the source of his difficulties. After that meeting, the Committee voted to adhere to its earlier decision. *See* 1987 Bockstein Aff. at ¶ 13. Purpura notified plaintiff that his status as a student at AECOM was terminated as of May 15, 1986.

*The State Court Action*

After his dismissal from AECOM, on February 6, 1987 plaintiff brought an action against AECOM, Purpura, Cook, Shapiro, and David M. Milstein, M.D., an associate professor at AECOM, in New York State Court. His complaint, which set forth eleven causes of action and 104 factual allegations, alleged that it was brought to remedy acts of unlawful discrimination pursuant to N.Y.Exec.Law §§ 296(4) and 297(9) (McKinney 1982),[3] to recover damages for personal injuries caused by defendants discriminatory conduct, to recover damages for breach of contract and tortious interference with contractual relations, and for injunctive relief. Specifically, the complaint alleged that plaintiff suffered from a temporal lobe epilepsy that impaired his performance as a medical student, *see* Plaintiff's Verified Complaint in *Garg v. Albert Einstein College of Medicine of Yeshiva University*, Index No. 7406/87, at ¶¶ 9–16, 45, 82–88 (Sup.Ct. Bronx Co. Feb. 6, 1987) ("State Complaint") (annexed to the Bockstein Aff. as Ex. B), and that the defendants' failure to grant him a medical leave of absence in light of his medical problem and their subsequent action in terminating him from AECOM constituted both unlawful discrimination based upon a medical disability and racial and ethnic discrimination because such leaves were routinely granted to white and Jewish students. *See id.* at ¶¶ 28–30.

The complaint also alleged that all of the defendants, except Purpura, discriminated against him on racial and ethnic grounds in violation of N.Y.Exec.Law § 296(4) because they allegedly took the following actions without good cause and without legitimate academic justification: (1) defendants required plaintiff to repeat a psychiatry clerkship because he completed certain written assignments too late, even though

**3.** N.Y.Exec.Law § 296(4) (McKinney 1982) provides as follows:

> It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be nonsectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise qualified, by reason of his race, color, religion, disability, national origin, age or marital status.

N.Y.Exec.Law § 297(9) (McKinney 1982) allows a party allegedly subject to discrimination to bring an action in any court of appropriate jurisdiction.

he passed the examination and his clinical performance was above average; (2) after plaintiff failed to persuade defendants to allow him credit for the clerkship without repeating it, plaintiff commenced work in a repeat clerkship, but was suspended from AECOM arbitrarily on May 4, 1985 and was unable to complete the repeat clerkship; and (3) defendant Cook wrote to every residency program to which plaintiff had applied, stating that plaintiff would not graduate from AECOM before July 1, 1985 and stating that his sense of responsibility was questionable. *See id.* at ¶¶ 34–37, 49–50. Plaintiff claimed that these actions caused him to lose an opportunity for a medical residency at the University of California, San Diego ("UCSD") and made it impossible for him to obtain acceptance to any other residency programs. *See id.* at ¶¶ 37, 51–52.

Additionally, plaintiff alleged that all defendants breached various expressed and implied obligations owed to AECOM students regarding discrimination, treatment of academic deficiencies, leaves of absence, suspension, withdrawal, assistance to students who encounter difficulties with their studies, and permission for students to review their records. *See id.* at ¶¶ 55–69. Plaintiff claimed that defendants' breaches of these agreements constituted racial and ethnic discrimination because they discharged these obligations with respect to white and Jewish students. *See id.* at ¶¶ 72–73, 77–78.[4]

Plaintiff sought reinstatement at AECOM, deletion of adverse materials from his files, an injunction against further false and damaging communications to individuals or institutions regarding plaintiff's academic status, compensatory damages of $540,000, and if plaintiff was not reinstated, an additional $2,115,500 for punitive damages, money expended as a student at AECOM, and as compensation for the loss of his medical career.

Defendants moved to dismiss plaintiff's action pursuant to N.Y.Civ.Prac.L. & R. ("CPLR") § 3211(a) (McKinney 1972) on the grounds that the complaint failed to state a cause of action and in any event was barred by the statute of limitations. In addition, defendants having submitted affidavits and other documents, they requested that the court treat the motion as one for summary judgment pursuant to CPLR § 3211(c). *See* Bockstein Aff. at ¶ 14. In response, plaintiff submitted an affidavit accompanied by documentary exhibits and moved for an order to show cause for the court's permission to seal the court records and proceed under an anonymous name. *Id.* at ¶ 16.

The State Court denied plaintiff's application to have the court papers sealed and dismissed the action. *See Doe v. Albert Einstein College of Medicine*, Index No. 7406/87 (Sup.Ct.Bronx Co. Sept. 11, 1987) (annexed to Bockstein Aff. as Ex. E) ("State Opinion"). The Court noted the "well settled" law in New York that a court may not review a university's decision to expel a student if the school "acts within its jurisdiction, not arbitrarily but in the exercise of honest discretion based on facts within its knowledge that justify the exercise of discretion," *id.* (citations omitted), and found that AECOM's actions were a legitimate exercise of that discretion. *Id.* Consequently, the Court concluded that "[t]his plaintiff has failed to state a cause of action (§ 3211, subd. (a)7 C.P.L.R.)." *Id.*[5]

Plaintiff appealed this decision to the New York State Supreme Court, Appellate Division, First Department. *See* Bockstein Aff. ¶ 18. In his appellate brief, plaintiff argued that the state court failed to consider his allegations that the complaint was

---

**4.** Plaintiff also asserted that because the defendants knew of his medical condition, which had been aggravated by their prior decision to suspend him and the loss of his residency at UCSD, their subsequent actions in dismissing him intentionally, recklessly and negligently caused plaintiff to suffer emotional distress. *See* State Complaint at ¶¶ 82–88, 91–98. Plaintiff also claimed that Dr. Cook's letter to the residency programs was defamatory. *See id.* at ¶¶ 100–04.

**5.** The Court noted that even if the school's actions were arbitrary and capricious, and thus reviewable under Article 78 of the CPLR, the action would still have to be dismissed because it was time-barred. *See* State Opinion, at 2, 3.

essentially one of unlawful discrimination; that the proper statute of limitations for his action was three years; and that the lower court applied an incorrect burden of proof in analyzing plaintiff's discrimination claims. *See id.* at ¶ 19. The Appellate Division affirmed the lower court without opinion. *See id.* at ¶ 20. Thereafter, plaintiff sought leave to appeal to the New York Court of Appeals, which was denied. *See id.* at ¶ 21.

### The Federal Court Action

On April 24, 1989, plaintiff commenced this action by filing another complaint. This complaint alleges only one cause of action and sets forth twenty-two factual allegations.[6]

More specifically, the complaint alleges that defendant Shapiro interfered with plaintiff's graduation because of a personal conflict stemming from a dispute about a patient's diagnosis, *see* Complaint at ¶ Fifteenth; that AECOM's demand that plaintiff repeat the psychiatry clerkship while he was also taking a required subinternship made it impossible for plaintiff to graduate with his class, *see id.* at ¶ Sixteenth; that when plaintiff attempted to repeat his psychiatry clerkship, he was arbitrarily and without warning suspended from AECOM, *see id.* at ¶ Seventeenth; that defendant's bias, prejudice and arbitrary conduct cost plaintiff valuable residencies in internal medicine, including one at UCSD, *see id.* at ¶ Eighteenth; and that defendant has maintained a practice of racial discrimination toward plaintiff which was not adopted toward the other students at the school. *See id.* at ¶¶ Nineteenth–Twentieth. Plaintiff further contends that the aforementioned practices constituted a continuing violation of plaintiff's constitutional rights. *See id.* at ¶ Twenty–Second.

Based on these allegations plaintiff seeks: a judicial declaration that his constitutional rights have been violated, compensatory damages of $500,000, and punitive damages of $1,000,000.

## DISCUSSION

Where, as here, a federal court must decide the preclusive effect of a state judgment, the Court is required by statute to afford the state judgment the same preclusive effect it would have in the state court. *See* 28 U.S.C. § 1738 (1988); *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81–84, 104 S.Ct. 892, 896–97, 79 L.Ed.2d 56 (1984); *Fay v. South Colonie Central School District,* 802 F.2d 21, 28–30 (2d Cir.1986).

■ The applicable standard under New York law for claim preclusion[7] is that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 1159, 445 N.Y. S.2d 687, 688 (1981); *see Fay, supra,* 802 F.2d at 28. A prerequisite to the application of that standard is that the dismissal of the original action be on the merits. *See Alco Gravure, Inc. v. Knapp Foundation,* 64 N.Y.2d 458, 465, 479 N.E.2d 752, 755, 490 N.Y.S.2d 116, 119 (1985); *Miller Mfg. Co. v. Zeiler,* 45 N.Y.2d 956, 958, 383 N.E.2d 1152, 1153, 411 N.Y.S.2d 558, 559 (1978) (per curiam); *Farkas v. New York State Dept. of Civil Service,* 114 A.D.2d 563, 564–65, 494 N.Y.S.2d 178, 179 (3d Dep't 1985).

6. Paragraphs Fourth, Fifth, Sixth, Seventh and Eighth describe the parties. The following six paragraphs, paragraphs Ninth through Fourteenth, describe plaintiff and provide general details regarding his studies at AECOM.

7. The terminology of *res judicata* and other related doctrines has been marked by "varying and occasionally conflicting terminology." *See generally* 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction § 4402 (1981). The modern rule is that *res judicata* actually includes two related doctrines: claim preclusion, which prevents a party from initiating a second lawsuit where the dispute between the parties has been resolved on the merits in a prior lawsuit, and issue preclusion, which bars the relitigation of issues actually decided in and essential to resolution of a prior litigation between the parties. *Id.* (quoting *Kaspar Wire Works, Inc. v. Leco Engr'g & Mach., Inc.,* 575 F.2d 530, 535–36 (5th Cir.1978)).

In this case plaintiff's complaint clearly arises out of the same transaction or series of transactions, *i.e.*, his difficulties at and subsequent dismissal from AECOM. Moreover, it is also clear that an action for damages under New York's Human Rights laws provides redress for alleged discrimination at least as broad as that allowed under the federal civil rights laws. *See Mitchell v. Nat'l Broadcasting Co.*, 553 F.2d 265, 269–70 (2d Cir.1977); N.Y. Exec.Law §§ 296(4), 297(9). Thus, the only issue that must be resolved is whether Justice Turret's decision dismissing plaintiff's complaint for failure to state a cause of action under N.Y. CPLR § 3211(a)(7) is a dismissal on the merits under New York law.

■ New York courts have held that "when a complaint is dismissed for legal insufficiency or other defect in [the] pleading, it does not act as a bar to commencement of a new action for the same relief unless the dismissal was expressly made on the merits or the new complaint fails to correct the defects or omissions fatal to the prior one." *Deacon's Bench, Inc. v. Hoffman*, 101 A.D.2d 971, 972, 477 N.Y.S.2d 447, 449 (3d Dep't 1984) (citations omitted); *accord 175 East 74th Corp. v. Hartford Accident & Indem. Co.*, 51 N.Y.2d 585, 590 n. 1, 416 N.E.2d 584, 586 n. 1, 435 N.Y.S.2d 584, 586 n. 1 (1980); *Blank v. Miller*, 122 A.D.2d 356, 358, 504 N.Y.S.2d 580, 582 (3d Dep't 1986); *Furia v. Furia*, 116 A.D.2d 694, 695, 498 N.Y.S.2d 12, 13 (2d Dep't 1986); *McKinney v. City of New York*, 78 A.D.2d 884, 885, 433 N.Y.S.2d 193, 196 (2d Dep't 1980). Thus, where, as here, a New York state court dismisses an action under N.Y. CPLR § 3211(a)(7) for failure to state a claim and does not state that its decision was on the merits, that judgment will only preclude actions which are brought upon the same theories of liability or which fail to correct the defects of the original pleading. *See Plattsburgh Quarries, Inc. v. Palcon Indus., Inc.*, 129 A.D.2d 844, 845–46, 513 N.Y.S.2d 861, 862 (3d Dep't 1987).

■ Here, the state court dismissed plaintiff's action because plaintiff had alleged no facts sufficient to support his claim that the college and its officials had abused their discretion in dismissing the plaintiff. In doing so, the state court followed the well established New York rule that judicial review of a university's academic decisions is limited to a determination of whether the university has acted in a manner that is "arbitrary and capricious, irrational, made in bad faith or contrary to Constitution or statute." *Susan M. v. New York Law School*, 76 N.Y.2d 241, 246, 556 N.E.2d 1104, 1107, 557 N.Y.S.2d 297, 300 (1990); *accord Tedeschi v. Wagner College*, 49 N.Y.2d 652, 658, 404 N.E.2d 1302, 1304, 427 N.Y.S.2d 760, 763 (1980); *James v. Board of Educ. of the City of New York*, 42 N.Y.2d 357, 365, 366 N.E.2d 1291, 1297, 397 N.Y.S.2d 934, 940–41 (1977); *Chusid v. Albany Medical College of Union University*, 157 A.D.2d 1019, 550 N.Y. S.2d 507, 508 (3d Dep't 1990). This rule is based on a recognition of the subjective nature of the academic decisions made by educators and the New York courts' reluctance to impose strict legal guidelines upon academic evaluations. *Tedeschi, supra*, 49 N.Y.2d at 658, 404 N.E.2d at 1304, 427 N.Y.S.2d at 763.

■ A claim alleging racial discrimination clearly warrants judicial intervention under this standard. *See Alevy v. Downstate Medical Ctr.*, 39 N.Y.2d 326, 337, 348 N.E.2d 537, 546, 384 N.Y.S.2d 82, 91 (1976) ("[W]here benign or malign discrimination is practiced ... judicial vigilance and intervention, however undesirable, are required."). Moreover, New York courts have reviewed educators' academic decisions where the plaintiff has alleged that the school officials failed to adhere to the school's regulations or policies and have therefore breached a contract entered into with the students. *See Vought v. Teachers College, Columbia Univ.*, 127 A.D.2d 654, 655, 511 N.Y.S.2d 880, 881 (2d Dep't 1987).

A comparison of the federal complaint with the state complaint demonstrates that plaintiff's complaint in this court fails to allege any additional facts not considered by the state court supporting plaintiff's claim that the defendants' decision to dismiss plaintiff from AECOM was motivated by racial bias and thus fails to correct the deficiencies noted by the state court as a

basis for dismissing plaintiff's prior state court action. Indeed, the federal complaint alleges even less facts than set forth in the state complaint. At best, the federal complaint makes only conclusory allegations that plaintiff's rights have been violated.[8]

It follows that the Court must conclude that plaintiff has failed to correct the defects present in his state complaint and that this action is barred.[9]

## CONCLUSION

For the reasons set forth above, the complaint in the above-captioned action is dismissed. Because plaintiff has not requested leave to amend his complaint, the complaint is dismissed with prejudice.

It is SO ORDERED.

---

**8.** Indeed, the only substantive allegation that plaintiff makes in this action that was not made in the state complaint is the allegation that Dr. Shapiro interfered with plaintiff's graduation because of disagreements regarding a patient's diagnosis during his surgery clerkship at Jacobi Hospital which took place from January 1984 to March 1984. *See* Complaint at ¶ Fifteenth. This allegation, however, was in fact presented to the state court in plaintiff's affidavit in opposition to the defendants' motion to dismiss wherein he set forth in detail his version of the disagreements with Dr. Shapiro and his contention that she engaged in a racially motivated "vendetta" against him, which culminated in his termination from AECOM. *See* Affidavit of Ajay P. Garg at ¶¶ 74–81 (sworn to March 17, 1987) ("Garg Aff.") (annexed to Bockstein Aff. as part of Ex. D).

Under New York law, a *court may consider* affidavits submitted by a plaintiff in opposition to a motion to dismiss in order to ascertain if the plaintiff possesses sufficient facts to "preserve inartfully pleaded, but potentially meritorious, claims," *Rovello v. Orofino Realty Co.,* 40 N.Y.2d 633, 635–36, 357 N.E.2d 970, 972, 389 N.Y.S.2d 314, 316 (1976) (per curiam); *see Goldsmith v. Sternberg,* 125 A.D.2d 365, 365, 509 N.Y.S.2d 89, 89–90 (2d Dep't 1986), because in deciding a motion to dismiss for failure to state a claim "the court's attention should be focused on whether the plaintiff has a cause of action rather than on whether he has properly stated one." *R.H. Sanbar Projects, Inc. v. Gruzen Partnership,* 148 A.D.2d 316, 318, 538 N.Y.S.2d 532, 533–34 (1st Dep't 1989). It is clear therefore that under New York law Justice Turret was required to consider plaintiff's allegations against Dr. Shapiro in ruling on the motion to dismiss. Thus, this allegation, even though not set forth in the complaint, was also necessarily rejected by the state court.

**9.** Defendants have also argued that the Court should dismiss this action because plaintiff did not request leave to replead the complaint in the state court action as required by N.Y. CPLR § 3211(e). *See Bardere v. Zafir,* 63 N.Y.2d 850, 852, 472 N.E.2d 37, 38, 482 N.Y.S.2d 261, 262 (1984). The Court declines this invitation to hold plaintiff to the procedural niceties of New York civil procedure, especially where it is doubtful that New York courts would do so. In *Plattsburgh Quarries, supra,* the plaintiff, whose second cause of action was not precluded because it differed from the first action that had been dismissed for failure to state a claim, had similarly failed to request leave to replead in the first action. Although the Court stated that "had plaintiff complied with [N.Y. CPLR § 3211(e)], ... the delay and cost resulting from the commencement of [the second] action, the subsequent motion to dismiss and this appeal would have been avoided," his failure to request leave to replead in the first action did not bar him from commencing the second action. 129 A.D.2d at 846, 513 N.Y.S.2d at 863. *But see VanMinos v. Merkley,* 48 A.D.2d 281, 287–88, 369 N.Y.S.2d 246, 253 (4th Dep't 1975) (Simons, J., dissenting) (second third party complaint should have been dismissed on *res judicata* grounds where original one was dismissed for failure to state a cause of action and third-party plaintiff had not sought leave to replead in opposition to that motion).