**Won Teh HWANG, Plaintiff,**

v.

**DUNKIN' DONUTS INCORPORATED, and Supermarkets General Corporation, Defendants.**

No. 93–CV–970.

United States District Court, N.D. New York.

Jan. 7, 1994.

Won Teh Hwang, plaintiff, pro se.

O'Rourke, Degen Law Firm, New York City (Ronald Degen, of counsel), for Dunkin' Donuts.

Levene, Gouldin Law Firm, Binghamton, NY (John T. Hartman, of counsel), for Supermarkets Gen.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

**Background:**

Presently before the court is a motion for summary judgment by the defendants and a

cross motion for summary judgment brought by the plaintiff. The underlying action was commenced by the plaintiff, Won Teh Hwang (hereinafter Hwang), against the defendants, Dunkin' Donuts and Supermarkets General Corporation (hereinafter SCG), alleging tortious interference with contractual relations, conversion, and a violation of New York State General Business Law.

The facts of the case indicate that in 1987 Hwang and Dunkin' Donuts entered into a franchise agreement in which Hwang would assume control of a Dunkin' Donuts shop located at 42–02 Northern Boulevard, Long Island City, New York (hereinafter "premises"). In preparing to operate this donut shop, Hwang signed an assignment and assumption of lease with SCG, the landlord of the premises. It should be noted here, that at no time was Dunkin' Donuts a party to the lease of the premises.

The record indicates that, included within the prior owner's lease with SCG, was a lease option agreement which provides in part, that if the franchise agreement of the lessee of the premises was terminated, "the lessee at the option of Dunkin' Donuts will assign to Dunkin' Donuts all of its right, title and interest in said indenture of Lease." (Lease Agreement, Defendant's exhibit E).

On or about April 17, 1989, an attorney for Dunkin' Donuts sent a letter to in-house counsel for SCG advising them that an order had been issued by a state court judge terminating Hwang's franchise agreement as of August 18, 1988. (Defendant's exhibit K). Additionally, the letter indicated that Dunkin' Donuts wished to exercise its rights under the lease option agreement dated April 7, 1978. Upon this communication and in accordance with the lease option agreement, SCG notified Hwang that his lease was automatically terminated and that his interest was to be conveyed to Dunkin' Donuts.

On September 12, 1989 a Sheriff's sale was conducted on the premises, pursuant to a state court judgment obtained by Dunkin' Donuts against Hwang for breaching the franchise agreement and a prior promissory note. At this sale, Hwang voluntarily turned over his keys to the premises and never asked that they be returned despite the fact that no legal proceedings were ever commenced to evict Hwang.

In his complaint, Hwang alleges four causes of action. The first cause of action stems from the alleged failure of Defendant Dunkin' Donuts to reveal the existence or proposed construction of 6 Dunkin Donut franchises within a one mile radius of the franchise Hwang was to purchase. Hwang alleges that such conduct violates New York State Franchise Law and the principles of honesty and fair play. Hwang's second and third causes of action allege that Dunkin' Donuts assumption of Hwang's lease in accordance with the lease assumption clause caused Hwang one million dollars of revenue damage and amounts to the wrongful confiscation of the plaintiffs property in violation of New York Penal Law § 155.05. Lastly, Hwang alleges that by virtue of Dunkin' Donuts' "malicious and larcenous conduct", he was forced to do extensive legal research in order to set forth this present complaint. Accordingly, he requests this court to reimburse him for the time and effort he has expended. The court will address the merits of these causes of actions seriatim.

**Analysis:**

As previously stated, both parties in this case have made motions under Rule 56 of the Federal Rules of Civil Procedure for summary judgment. Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has established that no genuine question of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a similar response setting forth "specific facts showing that there is a genuine issue for trial," absent which summary judgment will be granted. The opposing party "may not rest upon the mere allegations or denials of [his] pleading" (Fed.R.Civ.P. 56(e)) but rather must present "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91

L.Ed.2d 202 (1986). Indeed, "conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material fact, or defeat the motion through mere speculation of conjecture." *Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990).

■ Of course, it is well established that in deciding a motion for summary judgment, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). Further, it is equally well settled that "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). With this standard in mind, the court will address the defendants motion first and then proceed to address the plaintiff's motion for summary judgment.

### 1. Hwang's Compliant:

The plaintiff's complaint revolves around a lease option agreement signed by Hwang's predecessor and SCG, to which Hwang became bound when he assumed the lease of the premises. In his first cause of action Hwang seeks $343,389.00, for the value of the subject leasehold. The second cause of action demands $1,000,000.00 in "revenue damages" resulting from the appropriation of the Hwang's donut-shop leasehold and premise. In his third cause of action Hwang asks for the total damages sought in the first two cause of action, because the same conduct

"constitutes deceitful and unlawful practice in violation of New York Penal Law 155.05.[1] Finally, in his last cause of action, Hwang demands "collateral and punitive damages" of $10,000,000.00.

It is undisputed that on April 17, 1989 Dunkin' Donuts wrote a letter to SCG in which it announced its intention to exercise its rights under a lease option agreement. On May 15, 1989 SCG responded to the communication by notifying Hwang that its lease had been automatically conveyed to Dunkin' Donuts. Hwang has now commenced an action where the gravamen of the complaint is that through these letters of correspondence, Dunkin' Donuts wrongfully took Hwang's corporation leasehold. Taking this allegation in a light most favorable to the non-moving party and taking into consideration the fact that Hwang is proceeding in a pro se manner, this court will construe these causes of action to infer that recovery rests upon the theories of tortious interference with contractual relations and conversion.

In analyzing these two theories, it becomes clear that both theories are governed by Section 214 of the New York Civil Practice Law and Rules. Section 214 mandates that such actions must be commenced within a three year period or else they are procedurally barred. *See, Schonberger v. Serchuk*, 742 F.Supp. 108 (S.D.N.Y.1990) (Stating that under New York law, a three year statute of limitations applies to a cause of action for intentional interference with contractual relations); and *Two Clinton Square Corp. v. Friedler*, 91 A.D.2d 1193, 459 N.Y.S.2d 179 (1983) (Noting that an action in conversion of personal property is governed by three-year statute of limitations whether the action arises out of a contractual relationship or is due to tortious conduct on the part of the defendant.).

■ The three year statute of limitations for a claim of tortious interference of contractual relations begins to run when the contract in question has been breached. *See, Kartiganer Associates, P.C. v. New Windsor*, 108 A.D.2d 898, 485 N.Y.S.2d 782 (2 Dept. 1985); *Fury Imports, Inc. v. Shakespeare*

---

1. Section 155.05 of the New York Penal Law sets forth the legal definition of larceny.

*Co.,* 625 F.2d 585 (5th Cir.1980) *cert. denied,* 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 349 (1981). In the case at bar, this breach would have occurred on May 15, 1989, when SCG notified Hwang by letter that his lease of the premises had been terminated. Accordingly, since this claim arose on May 15, 1989, the time within which the plaintiff had to file a complaint expired on May 15, 1992. The plaintiff filed his complaint on July 23, 1993, more than one year past the applicable deadline. Thus, the claim of tortious interference of contractual relations must be dismissed as untimely.

■ With regard to the claim of conversion, the time in which a lawsuit must be commenced begins when the conversion occurs. *Varga v. Credit–Suisse,* 5 A.D.2d 289, 171 N.Y.S.2d 674 (1st Dept. 1958), *aff'd, Varga v. Credit Suisse,* 5 N.Y.2d 865, 182 N.Y.S.2d 17, 182 N.Y.S.2d 17, 155 N.E.2d 865 (1958). Viewing the facts in a light most favorable to the non-moving party, the latest possible date upon which this conversion could have occurred is September 12, 1989 when the plaintiff turned over his keys to the premises to the Sheriff so that a Sheriff's sale could be conducted at the site. Using this date as the starting point, the plaintiff's claim for conversion would have expired September 12, 1992 due to the three year statute of limitations on conversion claims. As previously stated, the plaintiff commenced this action well after this date and consequently, the claim of conversion must also be dismissed as untimely.

In an effort to circumvent the three year statute of limitations that accompany the torts of conversion and interference of contractual relations, the plaintiff argues that the real crux of the matter is fraud, and as such, the court should apply a six year statute of limitations. To support this contention the plaintiff alleges that Dunkin' Donuts fraudulently induced him into signing the franchise agreement, when Dunkin' Donuts when failed to reveal in its "offering prospectus" the existence or proposed existence of 6 Dunkin' Donuts franchises within a one mile radius of the franchise Hwang was to purchase, as required by New York General Business Law § 683.

Dunkin' Donuts counters this argument by informing the court that this identical issue was raised and decided in a previous state court proceeding. Accordingly, Dunkin' Donuts avers that the doctrine of res judicata bars Hwang from now raising this argument in federal court. This court is compelled to agree.

■ The Full Faith and Credit Clause of the United States Constitution and its enabling statute (28 U.S.C. § 1738), require that "every court within the United States" give full faith and credit to "[s]uch Acts, records,' and judicial proceedings or copies thereof, so authenticated." It is now well settled law that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. *See, Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Garg v. Albert Einstein College of Medicine of Yeshiva University,* 747 F.Supp. 231, 235 (S.D.N.Y.1990).

Accordingly, Hwang's first cause of action must fail because Hwang raised this identical issue in a state court proceeding entitled *Dunkin' Donuts, Incorporated v. HWT Associates, Inc. et al.,* 181 A.D.2d 711, 581 N.Y.S.2d 363 (2 Dept.1992). In this state court proceeding, a New York State Appellate Division court issued a decision an order dismissing Hwang's argument by means of summary judgment. In its decision, the court articulated that the "financial information supplied by Dunkin' Donuts proves that it is exempt from the specific disclosure requirements of General Business Law § 683, and not required to furnish the location of competing franchises." *Id.* at 712, 581 N.Y.S.2d 363.

■ Under New York law, the granting of summary judgment "constitutes a final judgment on the merits for the purposes of res judicata." *G & T Terminal Packaging v. Consolidated Rail Corp.,* 719 F.Supp. 153, 158 (S.D.N.Y.1989). Accordingly, given the mandates of the Full Faith and Credit clause of the United States Constitution, and the final judgment of the previous state court

proceeding, this court is compelled to invoke the res judicata doctrine and bar the plaintiff from re-litigating the issue of whether or not the failure to disclose the existence of 6 Dunkin' Donuts franchises within a one mile radius of the franchise Hwang was to purchase, amounted to fraud on the defendants part. Thus, because this court is barred from entertaining the issue of fraud, it logically follows that this court is likewise barred from applying fraud's six year statute of limitations.

Finally, it should be noted that within his pleadings Hwang contends that this court is compelled to allow this action to proceed, despite the doctrine of res judicata, because in a prior state court proceeding, the state court included the following dictum: "In any legal or equitable remedy which [Hwang] might be advised to pursue by separate plenary action, [SCG] would appear to be a necessary party." *Dunkin' Donuts Incorporated v. HWT Associates, Inc., et al.* New York Supreme Court, Queens County. Index # 13132, 1988. Hwang interpreted this language as directing him to bring a "separate plenary action" and because he was so "directed" this court cannot as a matter of law now deny him the relief he seeks. The court does not agree with such an interpretation and for the reasons cited above, is compelled to grant the defendant's motion for summary judgement.

**Conclusion:**

In sum, the plaintiff's pro se complaint presented two distinct causes of action; conversion and tortious interference with contractual relations. New York mandates that both of these claims be brought within three years of the occurrence of the tort. The plaintiff failed to file a complaint within the requisite time period. Thus, this court is compelled to dismiss these claims as being untimely. Additionally, the allegation that defendant Dunkin' Donuts fraudulently induced the plaintiff into signing the franchise agreement is barred by the doctrine of res judicata. Therefore, for the reasons discussed above, the court grants the defendants motion to dismiss all claims brought against them and in so doing eliminates the need to address the plaintiff's cross motion for summary judgment.

**IT IS SO ORDERED.**