State of New York
Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered: January 5, 2017                 522691
_____

In the Matter of KATHY A.
    DOPP,
                        Appellant,

        v                                  MEMORANDUM AND ORDER

STATE UNIVERSITY OF NEW YORK,
                        Respondent.
_____

Calendar Date:  November 22, 2016

Before:  Garry, J.P., Egan Jr., Rose, Clark and Mulvey, JJ.

                    _____


        Cooper Erving & Savage LLP, Albany (Brett D. French of
counsel), for appellant.

        Eric T. Schneiderman, Attorney General, Albany (Frederick
A. Brodie of counsel), for respondent.


                    _____


Clark, J.

        Appeal from a judgment of the Supreme Court (DeBow, J.),
entered September 1, 2015 in Albany County, which, among other
things, dismissed petitioner's application, in a proceeding
pursuant to CPLR article 78, to review a determination of the
State University of New York at Albany expelling petitioner from
its program.

        In the fall of 2009, petitioner entered the political
science Ph.D. program at the Nelson A. Rockefeller College of
Public Affairs and Policy at the State University of New York at
Albany (hereinafter the University).  In April 2011, following
repeated conflicts with faculty members, petitioner was formally
referred for disciplinary action based upon her alleged

violations of the Student Code of Conduct. After a hearing, the Student Conduct Board (hereinafter the Board) found that petitioner violated certain prohibitions in the Student Code of Conduct, including incidents of harassing behavior directed toward at least two faculty members, and imposed a year-long disciplinary suspension.[1] The Board further stated that, if petitioner was readmitted to the University and the political science doctoral program, she would be placed on disciplinary probation through graduation and would be required to "meet with appropriate faculty to develop a written agreement with clear behavior expectations."

On July 3, 2012, following petitioner's completion of her disciplinary suspension, the Chair of the Political Science Department informed petitioner that departmental faculty had met to discuss her progress in the doctoral program, as they did for each doctoral candidate every spring,[2] and that the faculty had several concerns about her progress and were, therefore, requesting that she voluntarily withdraw from the program. Petitioner refused, and the Chair formally requested petitioner's dismissal from the Ph.D. program, citing petitioner's inability to respond appropriately to constructive criticism and form examination and dissertation committees and her unwillingness to complete the program as it was configured. The Vice Provost for Graduate Education thereafter indicated to petitioner that he would deny the dismissal request if petitioner could provide certain assurances relating to her return to the program, and, on August 29, 2012, petitioner and the Vice Provost signed a performance improvement plan (hereinafter PIP). The PIP stated that the faculty had five areas of concern regarding petitioner's ability to successfully complete the Ph.D. program and recited certain expectations that petitioner was required to meet in order to continue in the program, including that she complete the

---

[1] The Board's determination was subsequently upheld on administrative appeal.

[2] The Political Science Department did not discuss petitioner's academic progress in the spring of 2011 given that her disciplinary proceeding was ongoing.

required year-long research and writing seminar, adapt her scholarly interests to fit the interests and expertise of program faculty, form a dissertation committee in accordance with University policy and comport herself in a nondisruptive and professional manner in the classroom and in her interactions with faculty and students. The PIP expressly stated that petitioner's failure to adhere to these expectations would result in a recommendation that she be dismissed from the program.

Petitioner returned to the political science Ph.D. program in the fall of 2012. Following an incident in one of petitioner's classes on February 6, 2013, the Chair of the Political Science Department again recommended, on behalf of the departmental faculty, that petitioner be dismissed from the doctoral program on the basis that she had violated certain expectations set by the PIP. The Vice Provost for Graduate Education contacted petitioner and indicated that there was sufficient cause to act on the Political Science Department's request and move toward dismissal based upon her failure to comply with the PIP. Petitioner refused to voluntarily withdraw from the doctoral program with a Master's degree in political science, as recommended by the Vice Provost, and she was thereafter expelled from the program. The University's Graduate Academic Council denied petitioner's subsequent request for reinstatement.

Petitioner then commenced this CPLR article 78 proceeding seeking, among other things, reinstatement to the University's political science Ph.D. program as a student in good standing. Following joinder of issue, Supreme Court dismissed the petition on the merits. Petitioner now appeals, and we affirm.

As an initial matter, petitioner argues that Supreme Court erred in dismissing her petition without first conducting a hearing. While a trial court may hold a hearing to resolve issues raised in a CPLR article 78 proceeding "when confronted with a situation where it is impossible to determine the matter upon the submitted papers alone" (Matter of Ames v Johnston, 169 AD2d 84, 85 [1991]; see CPLR 7804 [h]), Supreme Court was not presented with such a situation here, as the parties did not disagree as to the underlying salient facts and circumstances

leading up to petitioner's dismissal, but rather differed in their interpretations of those facts and circumstances. Accordingly, because the matter could be determined summarily, no hearing was required (see Matter of Dugan v Liggan, 121 AD3d 1471, 1472 [2014]; Matter of Conte v Town of Norfolk Zoning Bd. of Appeals, 261 AD2d 734, 737 [1999]).

As to the merits, sound public policy considerations have long "militate[d] against the intervention of courts in controversies relating to an educational institution's judgment of a student's academic performance" (Matter of Susan M. v New York Law School, 76 NY2d 241, 245 [1990]; see Matter of Olsson v Board of Higher Educ. of City of N.Y., 49 NY2d 408, 413 [1980]; Tedeschi v Wagner Coll., 49 NY2d 652, 658 [1980]). "When an educational institution issues a diploma to one of its students, it is, in effect, certifying to society that the student possesses all of the knowledge and skills that are required by his [or her] chosen discipline. In order for society to be able to have complete confidence in the credentials dispensed by academic institutions, . . . it is essential that the decisions surrounding the issuance of these credentials be left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis" (Matter of Olsson v Board of Higher Educ. of City of N.Y., 49 NY2d at 413; see Matter of Susan M. v New York Law School, 76 NY2d at 245-246; Tedeschi v Wagner Coll., 49 NY2d at 658; see generally Maas v Cornell Univ., 94 NY2d 87, 92 [1999]). While courts are reluctant to intervene in an educational institution's assessment of a student's academic progress, academic determinations are not entirely immune to judicial review; our review, however, is limited to whether an institution's academic determination was arbitrary and capricious, irrational, made in bad faith or contrary to Constitution or statute (see Matter of Susan M. v New York Law School, 76 NY2d at 246; Matter of Chusid v Albany Med. Coll. of Union Univ., 157 AD2d 1019, 1020 [1990], lv denied 75 NY2d 711 [1990]). Further, where an educational institution has adopted rules or guidelines establishing procedures for the suspension or expulsion of students, the institution must substantially comply with those rules or guidelines (see Tedeschi v Wagner Coll., 49 NY2d at 660; Matter of Schwarzmueller v State Univ. of N.Y. at Potsdam, 105 AD3d 1117, 1118 [2013]; Matter of

<u>Weidemann v State Univ. of N.Y. Coll. at Cortland</u>, 188 AD2d 974, 975 [1992]).

Here, the University's determination to expel petitioner for academic reasons was based on its assessment that petitioner lacked the ability or effort needed to succeed in its political science doctoral program. As the Vice Provost for Graduate Studies and the Chair of the Political Science Department aptly emphasized, the success of Ph.D. candidates, unlike students in most other disciplines, is uniquely tied to the candidate's ability to develop "strong mentoring and collaborative relationships [with] faculty and students" and hear, understand and appropriately respond to constructive criticism, so as to form dissertation and field committees, successfully complete a prospectus and dissertation and ultimately defend that dissertation.

The record clearly demonstrates that, despite repeated advisements of a need for improvement, petitioner consistently displayed an inability to listen and respond professionally to constructive criticism of her work and challenges to her intellectual positions. For example, the classroom incident on February 6, 2013, which in part precipitated her dismissal, epitomized petitioner's approach toward the academic offerings of the University and her inability to work collaboratively toward her Ph.D. During the class in question, petitioner was scheduled to present a five-page paper distilling assigned readings within a certain time allotment and pose questions to the class for a seminar-style discussion. In lieu of the required paper, petitioner prepared a powerpoint presentation, which she emailed to the class and the professor the day before, along with instructions to disregard certain portions of the assigned reading. In response, the professor advised petitioner that a powerpoint presentation could not be a substitute for the paper, and petitioner replied that "the powerpoint would be more useful to the class." The next day, the professor again urged petitioner to submit the required paper and warned her of the presentation structure to which she was expected to adhere. Petitioner never submitted a paper and, during the presentation itself, petitioner failed to comply with the time restrictions and refused to yield the floor to allow for a classroom-wide

discussion on the assigned readings.  Even following the incident, petitioner failed to acknowledge her shortcomings in meeting the requirements of the assignment.

In addition, petitioner's attitude and inability to receive constructive criticism impacted her ability to satisfy the academic requirements of the program.  Petitioner had difficulty filling her examination and field committees in accordance with University policies and, significantly, at the time of her dismissal in her third year of study, petitioner had yet to secure a full complement of members for any of her three required committees.  Moreover, petitioner routinely requested to substitute or waive program requirements, thereby evidencing the mismatch between her interests and the University's political science doctoral program.  Petitioner continually struggled to establish a minor field that met with the requirements of the program and the approval of the Chair of the Political Science Department.  The Department denied petitioner's repeated requests to design a special minor in methodology, and she continued to press the issue into the spring semester of 2013, demanding that she be given a "rational justification[], other than that power [was] being asserted over [her], for the decision to not allow [her] to take . . . methodology as [her] minor field."  While petitioner later expressed interest in establishing a double minor in public law and public policy, she failed to meet the deadline for completing a draft proposal for this double minor.  Notably, this proposal was due a few weeks after the classroom incident.

In short, the record demonstrates that petitioner's dismissal was based on the University's academic assessment that petitioner lacked the ability or effort needed to succeed in its political science doctoral program and, thus, its determination to expel petitioner was not arbitrary or capricious, irrational, made in bad faith or contrary to Constitution or statute (see Matter of Lipsky v Ferkauf Graduate Sch. of Psychology, 127 AD3d 582, 582-583 [2015]; see generally Matter of Susan M. v New York Law School, 76 NY2d at 246-247).  Nor did the University fail to adhere to established rules or procedures (see 8 NYCRR 500.2 [c]), as the determination to expel petitioner was based entirely on her failure to meet required academic standards (compare

<u>Tedeschi v Wagner Coll.</u>, 49 NY2d at 660-661).

To the extent that any of the parties' outstanding arguments have not been addressed, we have reviewed them and found them to be lacking in merit.

Garry, J.P., Egan Jr., Rose and Mulvey, JJ., concur.


ORDERED that the judgment is affirmed, without costs.




ENTER:

Robert D. Mayberger
Clerk of the Court